# EXHIBIT A

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/393,884 | 02/26/2009 | Pierre F. Lebreton | 18438-59 (COR) | 1553 |

51957        7590        12/27/2011
ALLERGAN, INC.
2525 DUPONT DRIVE, T2-7H
IRVINE, CA 92612-1599

| EXAMINER |
|---|
| SOROUSH, ALI |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 12/27/2011 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patents_ip@allergan.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 12/393,884 | LEBRETON, PIERRE F. |
| | Examiner | Art Unit | |
| | ALI SOROUSH | 1617 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒  Responsive to communication(s) filed on <u>29 September 2011</u>.

2a) ☒  This action is **FINAL**.　　　2b) ☐  This action is non-final.

3) ☐  An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4) ☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

5) ☒  Claim(s) <u>23-32,34-36,38 and 40-67</u> is/are pending in the application.

　　5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐  Claim(s) _____ is/are allowed.

7) ☒  Claim(s) <u>23-32,34-36,38 and 40-67</u> is/are rejected.

8) ☐  Claim(s) _____ is/are objected to.

9) ☐  Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

10) ☐  The specification is objected to by the Examiner.

11) ☐  The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

　　Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

　　Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12) ☐  The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

13) ☐  Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

　　a)☐ All　b)☐ Some * c)☐ None of:

　　　1.☐  Certified copies of the priority documents have been received.

　　　2.☐  Certified copies of the priority documents have been received in Application No. _____ .

　　　3.☐  Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

　　* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
　　Paper No(s)/Mail Date <u>07182011</u>.

4) ☐ Interview Summary (PTO-413)
　　Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____ .

## DETAILED ACTION

### *Acknowledgement of Receipt*

Applicant's response filed on 09/29/2011 to the Office Action mailed on

05/31/2011 is acknowledged.

### *Claim Status*

Claims 23-32, 34-36, 38, and 40-67 are pending.

Claims 1-22, 33, 37, and 39 are cancelled.

Claims 23, 28, 34, 35, 40, 47, and 48 are currently amended.

Claims 49-67 are newly added.

Claims 23-32, 34-36, 38, and 40-67 have been examined.

Claims 23-32, 34-36, 38, and 40-67 are rejected.

The original claim set was inadvertently examined. Claims 1-22 as originally filed

were presented as claims 23-52 in a preliminary amendment filed on 12/15/2009.

Claims 23, 35, 40, 48, and 49-51 introduced new limitations in the preliminary

amendment not presented in the original claim set, however are taught in the art that is

commonly applied in this action and the first action.

### *Priority*

Priority to applications 60/085956 filed on 08/04/2008, 61/087934 filed on

08/11/2008, and 61/096278 filed on 09/11/2008 is acknowledged.

### Information Disclosure Statement

The information disclosure statement (IDS) submitted on 07/18/2011 is in compliance with the provisions of 37 CFR 1.97.  Accordingly, the information disclosure statement has been considered by the examiner.

### Claim Objections

### Response to Applicant's Arguments

In view of Applicant's amendments the objection to claims 10-22 is moot since these claims have been cancelled.

### Double Patenting

### Response to Applicant's Arguments

In view of Applicant's amendments the provisional rejection of claims 1, 8, 11, 10, 12, 13, 15, 17, 20, and 21 under 35 U.S.C. 101 as claiming the same invention as that of claims 1, 9, 10, 11, and 14-19 of copending Application No. 12/393768 is moot since the claims have been cancelled.

### Claim Rejections - 35 USC § 112

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

### Response to Applicant's Arguments

In view of Applicant's amendments the rejection of claims 14-22 under 35 U.S.C.

112, second paragraph is moot since the claims have been amended.

In view of Applicants amendments the rejection of claims 23 and 24 under 35

U.S.C. 112, second paragraph is withdrawn.


This is a new ground of rejection.

Claim 40 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite

for failing to particularly point out and distinctly claim the subject matter which applicant

regards as the invention.

Claim 40 recites the limitation "said solution containing" in line 3.  There is

insufficient antecedent basis for this limitation in the claim.


### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103(a) are summarized as follows:

1.      Determining the scope and contents of the prior art.

Application/Control Number: 12/393,884                                    Page 5
Art Unit: 1617

        2.    Ascertaining the differences between the prior art and the claims at issue.
        3.    Resolving the level of ordinary skill in the pertinent art.
        4.    Considering objective evidence present in the application indicating
              obviousness or nonobviousness.

### *Response to Applicant's Arguments*

        In view of Applicants the rejection of claims 1-22 under 35 U.S.C. 103(a) as

being unpatentable over Lebreton (US Patent Application 2006/0194758 A1, Published

08/31/2006) in view of Wang (US Patent Application 2005/0271729 A1, Published

12/08/2005) is moot since the claims have been cancelled.

        In view of Applicants the rejection of claims 23-26 under 35 U.S.C. 103(a) as

being unpatentable over Lebreton (US Patent Application 2006/0194758 A1, Published

08/31/2006) in view of Wang (US Patent Application 2005/0271729 A1, Published

12/08/2005) is withdrawn in view of the amendments to the claims.


        This is a new ground of rejection.

        Claims 23-32, 35, 36, 38, and 40-50 are rejected under 35 U.S.C. 103(a) as

being unpatentable over Lebreton (US Patent Application 2006/0194758 A1, Published

08/31/2006) in view of Calias et al. (US Patent 6521223 B1, Published 02/18/2003).

        The claims are directed to a sterile composition comprising hyaluronic acid (HA)

component crosslinked with a crosslinking agent such as 1,4-butanediol diglycidyl ether

(BDDE) and lidocaine, wherein the HA is not crosslinked to a non-HA biopolymer. The

claims are further directed to the composition is a cohesive (monophasic) composition.

The claims are further directed to the composition being a hydrated gel (hydrogel). The

claims are further directed to the amount of uncrosslinked (HA) is no greater than 10%.
The claims are further directed to the composition having an extrusion injection force of
about 13N at an extrusion rate of 12.5 mm/minute. The claims are further directed to the
composition having a viscosity between about 5 Pa*s to about 450 Pa*s when
measured at about 5 Hz. The claims are further directed to the composition has a
degree of crosslinking of at least about 6%. The claims are further directed to a method
of preparing a the composition comprising providing hyaluronic acid (HA) component
crosslinked with a crosslinking agent such as 1,4-butanediol diglycidyl ether (BDDE),
dialyzing the HA component against a phosphate buffer so that the pH is about 7.2,
adjusting the pH to above about 7.5, and adding lidocaine. The claims are further
directed to a method wherein the composition is sterilized by autoclaving. The claims
are further directed to the composition being homogenized after adding a solution of
lidocaine. The claims are further directed to a method wherein the hydrating the HA
component with an alkaline solution. The claims are further directed to a method
wherein the HA component is a mixture of low molecular weight HA and high molecular
weight HA with at least a weight of about 1 million daltons.

Lebreton teaches a method of forming monohase (cohesive) hydrogel (hydrated
gel) by adding a 25.6g mixture of dry sodium hyaluronate (sodium hyaluronic acid salt -
NaHA) fibers to 0.25N NaOH to hydrate; to this hydrate gel BDDE is added and
homogenized; the crosslinked product is neutralized to pH 7.2 with phosphate buffer
(dialyzing); the resulting hydrogel is homogenized before being packed into syringes
and sterilized in an autoclave (paragraphs 0074, 0076, 0086, 0087, 0090, and 0091).

The extrusion force is 14N (about 13N) at a rate of 12.5 mm/min (paragraphs 0062 and

0089). The concentration of HA in the hydrogel is 26 mg/ml (paragraph 0082). The

degree of crosslinking is 6.5% and viscosity is 41 at 1 Hz (approximately 5Hz) (table).

The mixture of NaHA fibers are at least one low molecular weight HA component and

high molecular weight HA component having a molecular weight of greater than or

equal to 1 million daltons (prior art claims 1 and 5). The formulation can be buffered to a

pH 6.5 to 7.5 following neutralization of the gel but before homogenization to make the

gel compatible with the human body (paragraphs 0048 and 0049 –which reads on

adjusting the pH from 7.2(neutralized) to 7.5). The composition can be used to prevent

tissue adhesions (paragraph 0005).

Lebreton lacks a teaching wherein the hydrogel further comprises lidocaine.

Calias et al. teach a single phase gel for the prevention of adhesion (title). The

single phase gel formed from reacting hyaluronic acid with divinyl sulfone (crosslinking

agent), and then neutralizing the pH (column 8, lines 55-60 and column 9, lines 8-9).

The gel can further comprises a drug (column 10, lines 4-5). A drug such as lidocaine is

incorporated in the gel for delivery to the tissue at the site of surgery (column 4, lines

23-27).

It would have been prima facie obvious to one of ordinary skill in the art at the

time of the instant invention to add lidocaine to the hydrogel composition of Lebreton.

One would have been motivated to do so in order to provide lidocaine, an anesthetic, to

the tissue at the site of surgery. It would have been obvious to one ordinary skill in the

art at the time of the instant invention to add the lidocaine to the hydrogel during the

homogenization in order to provide a hydrogel which as a lidocaine homogeneously mixed throughout the gel. With regard to the pH of the uncrosslinked NaHa gel is greater than 10, this limitation is taught by Lebreton that 25.6g NaHa is added 0.25N NaOH. With regard to the limitation that the HA is not crosslinked to a non-HA biopolymer, this is limitation is taught since no other biopolymer is present in the gel composition prior to final crosslinking. With regard to the limitation that the lidocaine is freely released in vivo, this limitation is taught because the prior art hydrogel and instant hydrogel are structurally indistinguishable and therefore it would necessarily result from the addition of lidocaine to the hydrogel. With regard to the limitation that the hydrogel is stable at ambient temperature for at least 6 hours following sterilization, this limitation is taught because the prior art hydrogel and instant hydrogel are structurally indistinguishable and therefore it would necessarily because this is a property of the hydrogel.

This is a new ground of rejection.

Claims 34 and 51-67 are rejected under 35 U.S.C. 103(a) as being unpatentable over Lebreton (US Patent Application 2006/0194758 A1, Published 08/31/2006) in view of Calias et al. (US Patent 6521223 B1, Published 02/18/2003) as applied to claims 23-32, 35, 36, 38, and 40-50 above, and further in view of Marko et al. (US Patent Application 2004/0101959 A1, Published 05/27/2004).

The claims are further directed to the composition has a concentration 20 mg/mL to 30 mg/mL crosslinked HA and 0.2 to 1% by weight of lidocaine.

Application/Control Number: 12/393,884                                          Page 9
Art Unit: 1617

The teachings of Lebreton and Calias et al. are discussed above.

Calias et al. lacks a teaching wherein the concentration of lidocaine is between
0.2 to 1%.

Marko et al. teach a crosslinked collagen hydrogel composition that comprises
0.3% lidocaine.

It would have been prima facie obvious to one of ordinary skill in the art at the
time of the instant invention to add 0.3% lidocaine. One would have been motivated to
do so in order to provide an HA hydrogel composition with lidocaine. With regard to the
limitations in claims 53-62, 66, and 67 about stability of the composition, these
limitations are necessarily present in the prior art gel since the instant composition and
the prior art composition are structurally indistinguishable.

### *Conclusion*

Applicant's amendment necessitated the new ground(s) of rejection presented in
this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP
§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37
CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE
MONTHS from the mailing date of this action.  In the event a first reply is filed within
TWO MONTHS of the mailing date of this final action and the advisory action is not
mailed until after the end of the THREE-MONTH shortened statutory period, then the
shortened statutory period will expire on the date the advisory action is mailed, and any

Application/Control Number: 12/393,884                                    Page 10
Art Unit: 1617

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to ALI SOROUSH whose telephone number is (571)272-

9925.  The examiner can normally be reached on M-F (9am-6pm).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Fereydoun G. Sajjadi can be reached on (571)272-3311.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/A. S./
Examiner, Art Unit 1617

                                        /KARLHEINZ R SKOWRONEK/
                                        Primary Examiner, Art Unit 1631

December 17, 2011

# EXHIBIT B

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Appln. Serial No. : 12/393,884 | ) Examiner: Ali Soroush |
| Applicant : | Pierre F. Lebreton | ) Art unit:   1617 |
| Filing Date: | February 26, 2009 | ) |
| For: | HYALURONIC ACID-BASED | ) |
| | GELS INCLUDING LIDOCAINE | ) Confirmation No.  1553 |

## DECLARATION UNDER 37 C.F.R § 1.132

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

1.      I am employee of Allergan, Inc., the assignee of this application.

2.      I am an expert in the area of polymer chemistry for medical aesthetics.  I hold Ph.D in Chemistry and Physico-Chemistry of Polymers, from the University of Montpellier-France, and a Masters of Science degree in Polymer Material from the National Chemistry School of Montpellier, France.

3.      I am also the inventor of the invention claimed in the above referenced subject patent application.

4.      I am familiar with the state of the art related to soft tissue fillers comprising crosslinked hyaluronic acid ("HA") shortly prior to August 4, 2008.  My statements below are directed to the knowledge and belief of those having ordinary skill in the art at this time.

5.      It was believed that adding lidocaine to hyaluronic acid gel compositions during manufacturing caused degradation of the hyaluronic acid prior to injection of the HA as a dermal filler.

6.     It was believed that lidocaine caused degradation of HA gel compositions during high temperature sterilization.

7.     It was not known whether  HA compositions comprising lidocaine were stable or not after high temperature sterilization when placed in storage for any significant length of time.

8.     It was also believed that the instability of HA described above would have caused a viscosity reduction of the HA that would make it unsuitable for soft tissue filling applications.

9.     Based upon the facts set forth above, a person of ordinary skill in the art would have expected that a dermal filler comprising hyaluronic acid and lidocaine would not have remained sufficiently stable to be useful as a soft tissue filler.

10.    It was not appreciated that a dermal filler comprising a cohesive gel of hyaluronic acid makes it possible for lidocaine to be combined with hyaluronic acid in a gel that is sufficiently stable to be useful as a soft tissue filler.

11.    The enhanced stability properties of the inventive dermal fillers was evidenced by certain experiments performed under my direction by my research team prior to the application filing date.

12.    The experiments are generally set forth in the patent application in the Examples and Drawings.

13.    The experiments showed that certain HA gels, when mixed with lidocaine, degraded and became substantially less viscous after high temperature sterilization, specifically autoclave sterilization, as would have been expected by one of ordinary skill in the art.  This is shown in Figures 1-3 of the application.  Samples 1, 2 and 3 exhibited a decrease in viscosity of approximately 60%, 73% and 35%, respectively.

14.    I discovered that other HA gels, when mixed with lidocaine, maintained their viscosity and elasticity, even after such high temperature sterilization.  This is shown in Figures 4, 5 and 7 of the application. Samples 4, 5 and 6 exhibited a decrease in

- 2 -

viscosity of approximately 30%, 0% and 13%, respectively and a non-significant viscosity change (measured at ~4%, + 9%, ~2%, respectively, below 10%) with additional pH adjustment.

15.     To my knowledge, it was a surprising and unexpected discovery, not appreciated prior to the present invention, that  certain cohesive HA gels, as defined in the application, when mixed with lidocaine, could be made to be heat and shelf stable.

17.     I hereby declare that all statements made herein of my own knowledge and belief are true; and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

### SIGNATURE

Date: May, 2nd 2012

Pierre F. Lebreton

Signed at: Pringy ( France )

- 3 -

# EXHIBIT C

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | |
|---|---|---|---|
| Applicant: | Pierre F. Lebreton | ) | Group Art Unit:  1617 |
| | | ) | |
| Serial No.: | 12/393,884 | ) | Examiner:  Ali Soroush |
| | | ) | |
| Filed: | February 26, 2009 | ) | Conf. No.:  1553 |
| | | ) | |
| For: | HYALURONIC ACID-BASED | ) | |
| | GELS INCLUDING LIDOCAINE | ) | |
| | | ) | |

### RESPONSE TO FINAL OFFICE ACTION

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir,

   Applicant thanks the Examiner for the in-person interview conducted on April 3, 2012 in the Remsen Building of the U.S.P.T.O., and submits this Response to the Office Action dated December 27, 2011, including a summary of the **substance of the interview**. Applicant requests a three-month extension of time for filing this Response, and authorizes that all fees therefor be charged to Deposit Account No. 01-0885.

   **Amendments to the Specification** are shown on page 2 of this paper.

   **Amendments to the Claims** are reflected in the **listing of claims** which begin on page 3 of this paper.

   **Remarks** begin on page 11 of this paper.

18438-59 (COR)

**Amendments to the Specification**

Please replace the paragraph beginning on page 26, line 18 of the application as filed, with the following two paragraphs:

--With regard to viscosity, Sample 3 and Sample 4 were found to be stable to autoclaving in Test 2 but were not stable in Test 1. Samples 4 and 5 were found to be stable to autoclaving in both Test 1 and Test 2. Figures 3 and 4 illustrate that Samples 3 and 4 were stable when prepared with lidocaine and with pH adjustment, but were not stable when lidocaine was added and the pH not adjusted. Figure 6 illustrates that Sample 5 prepared with lidocaine and pH control had similar viscous and elastic properties (G″/G′) to Sample 5 prepared without lidocaine. When Sample 5 was prepared with lidocaine and no pH adjustment, the viscous and elastic properties changed an insubstantial amount (Fig. 6). Figs. 7 and 8 illustrate that Sample 6 was stable and had similar viscous and elastic properties (G″/G′) when prepared with lidocaine, both with and without pH control.

Figures 1-5 and 7 show changes in viscosity between the autoclaved Samples without lidocaine ("No Lido") and the autoclaved Samples with lidocaine ("Lido no pH control"). More specifically, as shown in Figures 1-3, the viscosity at 0.1 Hz of Samples 1, 2 and 3 decreased at least about 35% when lidocaine was added. As shown in Figures 4, 5 and 7, the viscosity at 0.1 Hz of cohesive Samples 4, 5 and 6, in accordance with the invention, did not decrease to any appreciable extent (not greater than about 30%) when lidocaine was added and the combination was autoclaved. --

2

**Amendments to the Claims**:

This **listing of claims** will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1-22.  (Cancelled)

23. (Previously presented) A soft tissue filler composition comprising:

a hyaluronic acid (HA) component crosslinked with a crosslinking agent selected from the group consisting of 1,4-butanediol diglycidyl ether (BDDE), 1,4-bis(2,3-epoxypropoxy)butane, 1,4-bisglycidyloxybutane, 1,2-bis(2,3-epoxypropoxy)ethylene and 1-(2,3-epoxypropyl)-2,3-epoxycyclohexane, and 1,4-butanediol diglycidyl ether;

wherein the HA is not crosslinked to a non-HA biopolymer; and

lidocaine combined with said crosslinked HA component;

wherein the lidocaine is freely released *in vivo*; and

wherein the composition is sterile.

24. (Original) The soft tissue filler composition of claim 23 wherein the HA component comprises a cohesive composition.

25. (Original) The soft tissue filler composition of claim 23 wherein the HA component is a hydrated gel.

26. (Original) The soft tissue filler composition of claim 25 wherein the HA component includes no greater than between about 1% and about 10% uncrosslinked HA by volume.

27.   (Original) The soft tissue filler composition of claim 26 wherein the HA component includes no greater than about 10% uncrosslinked HA by volume.

28.   (Previously presented) The soft tissue filler composition of claim 23 wherein the extrusion force of the composition is between about 10 N and about 13 N at an extrusion rate of about 12.5 mm/minute.

29.   (Original) The soft tissue filler composition of claim 23 wherein said composition has a viscosity of between about 5 Pa*s and about 450 Pa*s when measured at about 5 Hz.

30.   (Original) The soft tissue filler composition of claim 23 wherein the crosslinking agent is BDDE.

31.   (Original) The soft tissue filler composition of claim 27 wherein HA component has degree of crosslinking of at least about 5%.

32.   (Original) The soft tissue filler composition of claim 27 wherein the HA component has a degree of crosslinking of at least about 6%.

33.   (Cancelled)

34.   (Previously presented) The soft tissue filler composition of claim 23 wherein the lidocaine is present at a concentration between about 0.1% and about 5.0% by weight of said composition.

35.   (Previously presented) A method of preparing a soft tissue filler composition, the method comprising the steps of:

providing a HA component crosslinked with at least one crosslinking agent selected from the group consisting of 1,4-butanediol diglycidyl ether (BDDE), 1,4-bis(2,3-epoxypropoxy)butane, 1,4-bisglycidyloxybutane, 1,2-bis(2,3-epoxypropoxy)ethylene and 1-(2,3-epoxypropyl)-2,3-epoxycyclohexane, and 1,4-butanediol diglycidyl ether or combinations thereof;

dialyzing the HA component against a phosphate buffer so that the pH is about 7.2;

adjusting the pH of said HA component from about 7.2 to an adjusted pH of about 7.5 to about 8; and

adding lidocaine HCl to said HA component at said adjusted pH of about 7.5 to about 8 to obtain said soft tissue filler composition.

36.   (Original) The method of claim 35 wherein said soft tissue filler composition is cohesive.

37.   (Cancelled)

38.   (Original) The method of claim 35 wherein said soft tissue filler composition is sterilized by autoclaving to form a sterilized HA-based filler composition and wherein said sterilized composition is stable at ambient temperature for at least 6 months.

39.   (Cancelled)

5

40.   (Currently Amended) The method of claim 35 further comprising the step of homogenizing the HA component during or after the step of adding ~~said solution containing~~ said lidocaine HCl.

41.   (Original) The method of claim 35 wherein said step of homogenizing comprises subjecting said composition to mixing with a controlled shear.

42.   (Original) The method of claim 35 wherein said step of providing a HA component comprises providing dry uncrosslinked NaHA material and hydrating said dry uncrosslinked NaHA material in an alkaline solution to obtain an alkaline, uncrosslinked NaHA gel.

43.   (Original) The method of claim 42 wherein said alkaline, uncrosslinked NaHA gel has a pH greater than about 8.0.

44.   (Original) The method of claim 43 wherein said alkaline, uncrosslinked NaHA gel has a pH greater than about 10.

45.   (Original) The method of claim 31 wherein said HA component comprises a high molecular weight HA component and a low molecular weight component.

46.   (Original) The method of claim 45 wherein said high molecular weight HA component has a molecular weight of at least about 1 million Da.

47.   (Previously presented) A cohesive soft tissue filler composition, the composition comprising:

6

a hyaluronic acid (HA) component crosslinked with 1,4-butanediol diglycidyl ether (BDDE); and

unbound lidocaine HCI combined with the crosslinked HA component,

wherein said cohesive soft tissue filler composition has an extrusion force of between about 10 N and about 13 N and has a viscosity of between about 5 Pa*s and about 450 Pa*s after sterilization.

48. (Previously presented) A method of preparing a cohesive HA-based filler composition, the method comprising the steps of:

providing dry uncrosslinked NaHA material and hydrating said dry uncrosslinked NaHA material in an alkaline solution to obtain an alkaline, uncrosslinked NaHA gel;

crosslinking said uncrosslinked NaHA gel with 1,4-butanediol diglycidyl ether (BDDE)to form a crosslinked alkaline HA composition with a pH above about 7.5;

adding a solution containing about lidocaine HCI to said HA component having said adjusted pH above about 7.5 to obtain said HA-based filler composition;

homogenizing said HA-based filler composition thereby forming a homogenized HA-based filler composition;

and sterilizing said homogenized HA-based filler composition thereby forming said cohesive HA-based filler composition,

wherein said cohesive HA-based filler composition has an extrusion force of between about 10 N and about 13 N at an extrusion rate of about 12.5 mm/minute and has a viscosity of between about 5 Pa*s and about 450 Pa*s when measured at about 5 Hz.

49.   (Previously presented) A method of adding lidocaine to a crosslinked hyaluronic acid (HA) composition comprising:

providing a 1,4-butanediol diglycidyl ether (BDDE) crosslinked HA composition having a pH of about 7.2 or lower;

increasing the pH of the composition to at least about 7.5;

adding lidocaine to the composition; and

sterilizing the composition by autoclaving the composition.

50.   (Previously presented) The method of claim 49, wherein the pH is increased to about 7.5 to about 8 before adding lidocaine to the composition.

51.   (Previously presented) A composition comprising a crosslinked hyaluronic acid (HA) at a concentration of about 20 mg/mL to about 30 mg/mL and lidocaine at a concentration of about 0.1% to about 5% by weight, wherein the composition has a pH above about 7.5.

52.   (Previously presented) The composition of claim 51, wherein the pH is about 7.5 to about 8.

53.   (Previously presented) The composition of claim 51, wherein the composition is stable to autoclaving.

54.   (Cancelled)

55.   (Currently amended) A sterile composition comprising a crosslinked hyaluronic acid (HA) at a concentration of about 22 mg/mL and lidocaine at a concentration of about 0.2% to about 1% by weight, wherein the composition is stable during storage under ambient conditions for at least 3 months.

56.  (Previously presented) The composition of claim 53, which is stable during storage under ambient conditions for at least 6 months.

57.  (Previously presented) The composition of claim 53, which is stable during storage under ambient conditions for at least 9 months.

58.  (Previously presented) The composition of claim 53, wherein the lidocaine concentration is substantially constant during storage under ambient conditions for at least 3 months.

59.  (Previously presented) The composition of claim 53, wherein the HA concentration is substantially constant during storage under ambient conditions for at least 3 months.

60.  (Previously presented) The composition of claim 53, having an extrusion force that is substantially constant during storage under ambient conditions for at least 3 months.

61.  (Previously presented) The composition of claim 53, wherein the composition remains a substantially homogeneous transparent gel during storage under ambient conditions for at least 3 months.

62.  (Previously presented) The composition of claim 53, wherein no substantial increase in 2,6-dimethylaniline concentration occurs during storage under ambient conditions for at least 3 months.

63.  (Previously presented) The composition of claim 53, wherein the lidocaine is freely released *in vivo*.

64.   (Previously presented)  The composition of claim 53, wherein the lidocaine is substantially unbound to the HA.

65.   (Previously presented)  The composition of claim 53, wherein the lidocaine is substantially unbound to the HA to the extent that, during dialysis of the composition against water, the composition has substantially the same concentration of lidocaine as the dialysis water within about 1 hour of beginning dialysis.

66.   (Previously presented)  The composition of claim 23, wherein the composition has a viscosity that is substantially the same as an otherwise identical composition that is not sterile.

67.   (Previously presented)  The composition of claim 23, wherein the composition has an extrusion force that is substantially constant for at least 9 months.

18438-59 (COR)

**Remarks:**

The subject, above-identified patent application has been carefully reviewed and amended in response to the Final Office Action mailed on December 27, 2011.  A three-month extension of time for filing this response is requested.  All fees dues in connection with the filing can be charged to Deposit Account No. 01-0885.

Applicant notes that a Request for Continued Examination (RCE) was filed on March 7, 2012, along with an Information Disclosure Statement (IDS) but without a Response to the final Office Action.

Applicant then received a Notice of Improper Request for Continued Examination ("Notice"), mailed on March 13, 2012, for the reason that the RCE "was not accompanied by a submission as required under 37 C.F.R. 1.114".  A copy of the Notice is filed along with **this present submission.**  Applicant submits that the conditions for filing the RCE have now been satisfied, and this Response, the IDS, and the additional IDS enclosed herewith should therefor be considered.

**Substance of the Interview Summary**

Applicant kindly thanks the Examiner for the in-person interview conducted at the USPTO Remsen Building, on April 3, 2012. Applicant agrees with the Examiner's Applicant-Initiated Interview Summary dated April 3, 2012, in that at the interview, the undersigned and the Examiner agreed that submitting a Declaration to show unexpected results of incorporating lidocaine into a hyaluronic acid gel that has been crosslinked, and has not been

11

crosslinked to any other polymer, would be sufficient to overcome the prior art of record.  Applicant has found that incorporation of lidocaine into such a gel provided a crosslinked hyaluronic acid-lidocaine gel that was stable and did not degrade over time, contrary to what had been expected by those of ordinary skill in the art at the time of the invention.  The Examiner asked that the Response to the Office Action point out where in the specification the description of the experiments performed by the inventor show the unexpected results.

**Remarks/Arguments**

Applicant submits herewith a Declaration under 37 CFR 1.132, of the inventor, Pierre Lebreton, as discussed.

The Declaration filed herewith is evidence that the presently claimed invention has unexpected properties, and would not have been obvious, at the time the invention was made, to a person having of ordinary skill in the art, under 35 U.S.C. 103(a).

Applicant bears the burden of rebutting a *prima facie* case by the presentation of evidence of unexpected results.  Section 716.01 of the MPEP states that such evidence of secondary considerations, traversing rejections, when timely presented, <u>must</u> be considered by the Examiner whenever present.  When such evidence is submitted, <u>all of the evidence must be considered anew</u>.  *In re Piasecki,* 745 F2d 1468, 1472-1473, 223 USPQ 785, 787-788 (Fed. Cir. 1984).

The enclosed Declaration is timely submitted, as it is being filed as a part of this submission for the RCE filed on March 7, 2012.

The present submission, including the Declaration and data in support thereof, are believed to be proof of nonobviousness of the claimed invention.

It is known that a showing of unexpected results can be made using examples in the specification. *In re Soni*, F.3d at 750, USPQ2d at 1687, ("Consistent with the rule that all evidence of nonobviousness must be considered when assessing patentability, the PTO must consider comparative data in the specification in determining whether the claimed invention provides unexpected results.").

In the present case, applicant offers evidence, in the form of the Declaration of the inventor, supported by examples and data in the specification, to show unexpected results, namely, that it was a surprising and unexpected discovery, not appreciated prior to the present invention, that certain hyaluronic acid gels, as defined in the application, when mixed with lidocaine, could be made to be heat stable and thus useful as dermal fillers.  The Declaration shows that it was believed that adding lidocaine to hyaluronic acid gel compositions during manufacturing caused degradation of the hyaluronic acid prior to injection of the hyaluronic acid as a dermal filler.  The Declaration further shows that at the time of the invention, it was not known whether a heat sterilized hyaluronic acid/lidocaine gel could be made to be stable.  As will be explained hereinafter, the examples and data in the specification support these assertions in the Declaration by showing that, when tested, certain hyaluronic acid based gels degraded and lost viscosity when mixed with lidocaine and heat sterilized, as was expected.  Further still, a publication entitled "The comparison of physiochemical properties of four

13

Cross-linked sodium hyaluronate gels with different cross-linking agents" Cui, et al., November 22, 2011, ("Cui, et al."), attached as Exhibit A, is offered as further evidence of unexpected results.  As will be further discussed below, Cui, et al. is offered as evidence showing that hyaluronic acid crosslinked with BDDE (as in some of the claimed embodiments) is <u>one of the least</u> heat stable of four different crosslinked hyaluronic acid gels tested by Cui, et al..  Applicant submits that this evidence, though published after the present invention, at least suggests that one would not expect a BDDE-crosslinked hyaluronic acid gel with lidocaine to be heat stable.

Accordingly, as will be shown, the presently claimed soft tissue filler compositions comprising a hyaluronic acid (HA) component crosslinked with a crosslinking agent selected from the group consisting of 1,4-butanediol diglycidyl ether (BDDE), 1,4-bis(2,3-epoxypropoxy)butane, 1,4-bisglycidyloxybutane, 1,2-bis(2,3-epoxypropoxy)ethylene and 1-(2,3-epoxypropyl)-2,3-epoxycyclohexane, and 1,4-butanediol diglycidyl ether, wherein the HA is not crosslinked to a non-HA biopolymer, and lidocaine combined with said crosslinked HA component, wherein the lidocaine is freely released *in vivo*, and wherein the composition is sterile, were at the time of the invention, a surprising and unexpected discovery, and non-obvious under 35 U.S.C. 103(a).

Section 716.02(a)III of the MPEP states that PRESENCE OF AN UNEXPECTED PROPERTY IS EVIDENCE OF NONOBVIOUSNESS and cites *In re Papesch*, 315 F.2d 381, 137 USPQ 43 (CCPA 1963).  It is well established that *a property of a claimed compound that is unexpected by the prior art is evidence of nonobviousness*.  In the present case, the heat stable property of the claimed dermal

18438-59 (COR)

filler compositions, as shown in the Declaration and as supported by the data of record, is evidence that the claimed compositions comprising hyaluronic acid and lidocaine, are nonobvious.

At the time of invention, it was believed that adding lidocaine to hyaluronic acid gel compositions during manufacturing caused degradation of the hyaluronic acid, especially when the combination was subjected to autoclaving. For example, it was believed that crosslinked hyaluronic acid compositions when combined with lidocaine were not capable of withstanding high temperature sterilization without a significant reduction in viscosity (See Declaration, paragraphs 4-6). Such a reduction of viscosity would make these compositions unsuitable for soft tissue filling applications. It was not appreciated, prior to the presently claimed invention, that a dermal filler comprising a cohesive gel of crosslinked hyaluronic acid makes it possible for lidocaine to be combined with hyaluronic acid to form a gel that is sufficiently stable to be useful as a soft tissue filler. Applicant submits that this Declaration, in view of the remarks herein and further in view of the publication submitted herewith (to be discussed below), show that the presently claimed invention is not obvious in view of the prior art, and is patentable.

Applicant has carefully reviewed the specification and has made certain corrections and clarifications thereto. These amendments do not add new matter to the application and are only done to make the specification read more clearly and consistently with the Figures showing actual test results.

Specifically, the specification has been amended on pages 25 and 26 to clarify the results of experiments represented in the

15

Figures.   These  new  replacement  paragraphs  do  not  add  any  new
matter  to  the  application  as  filed,  and  only  more  clearly  describe
experiments  performed,  under  the  direction  of  the  above-named
inventor,  and  already  shown  in  the  Figures  of  the  application  as
filed.    The  experiments  demonstrated  that  the  claimed  heat
sterilized,  crosslinked  hyaluronic  acid-based  compositions  with
lidocaine,  had  a  viscosity  similar  to  the  viscosity  of  their
precursor  crosslinked  HA  compositions  before  lidocaine  was  added,
whereas  other  heat  sterilized,  crosslinked  hyaluronic  acid-based
compositions  with  lidocaine,  had  a  substantial  reduction  in
viscosity  relative  to  their  precursor  crosslinked  HA  compositions
before  lidocaine  was  added.

The  experiments  are  described  in  the  specification  as  filed,  for
example,  in  Example  4,  entitled  "Stability  of  Soft  Tissue
Fillers",  beginning  on  page  24,  and  as  shown  in  the  corresponding
Figures.   Samples  1,  2  and  3  are  non-cohesive  HA  gels.   Samples  4,
5  and  6  are  cohesive  gels.   Cohesiveness  of  the  gel  is  defined,
for  example,  in  the  second  paragraph  on  page  9  of  the
specification,  and  in  Example  1  of  the  specification.

Through  these  experiments  described  in  Example  4,  it  is
demonstrated  that  cohesive  precursor  compositions  (crosslinked  HA-
compositions  prior  to  the  addition  of  lidocaine)  did  not  lose
viscosity  after  the  addition  of  lidocaine  and  heat  sterilization.

Generally,  with  regard  to  stability  in  terms  of  viscosity
(pas/sec),  Samples  1,  2  and  3  all  showed  a  substantial  reduction
in  viscosity  after  lidocaine  and  sterilization,  about  60%,  73%  and
35%  respectively.   More  specifically,  Figure  1  (Sample  1)  shows  a
drop  in  viscosity  from  just  below  about  600  to  about  250  after

16

lidocaine and heat sterilization.  Controlling pH of the precursor composition, as described in paragraph [0063], [0084] and [0104], does not result in any significant improvement.  Similar results are shown with respect to Samples 2 and 3 in Figures 2 and 3. Applicant submits that this lack of stability is what would have been expected by someone of ordinary skill in the art (see Declaration, paragraphs 4 and 5).  On the other hand, Samples 4, 5 and 6, shown in Figures 4, 5 and 7 exhibited a much lower, or even insignificant change in viscosity (about 30%, 0% and 13% respectively when lidocaine was added and the compositions heat sterilized.   Moreover, Samples 3, 4 and 5 showed a minimal viscosity change, all below 10%, when pH was adjusted.  Further, Figures 6 and 8 show more precise measurements for change in viscosity as well as elasticity of Samples 5 and 6, respectively. Figure 6 illustrates that Sample 5 prepared with lidocaine and pH control had nearly identical viscous as well as elastic properties (G″/G′) to Sample 5 prepared without lidocaine.   Figure 8 illustrates that Sample 6 was stable and had similar viscous and elastic properties (G″/G′) when prepared with lidocaine, both with and without pH control.

The enhanced stability properties of the presently claimed compositions make it possible for these compositions to be useful as commercial soft tissue fillers, as they can be heat sterilized and stored for long periods of time without any substantial change in their characteristics, such as, for example, extrusion force, viscosity, elasticity and transparency.  This is shown, for example in Table 2 which demonstrates that the claimed compositions are stable for at least 9 months from manufacture date.

17

18438-59 (COR)

Further submitted herewith, for the Examiner's consideration, in support of the non-obviousness of the presently claimed invention, is a publication entitled "The comparison of physiochemical properties of four Cross-linked sodium hyaluronate gels with different cross-linking agents" Cui, et al., November 22, 2011, ("Cui, et al."), attached as Exhibit A. Cui, et al. shows that HA gels are known to be sensitive to heat sterilization, and that even more particularly, that HA gels crosslinked with BDDE are known to be especially sensitive to heat sterilization relative to HA gels crosslinked with other, i.e. non-BDDE, crosslinkers. More specifically, the third paragraph and Figure 5 on page 1510 of Cui, et al. illustrates a drastic drop in intrinsic viscosity of a BDDE-crosslinked HA gel (identified as "BDDE-CHA") after heat sterilization, compared to HA-based gels crosslinked with other crosslinking agents (identified as "PEG20000-CHA" and "PDE-CHA"). Applicant submits that this publication provides further evidence that the discovery of a sterile HA-based composition, comprising BDDE as a crosslinker and with the addition of lidocaine, as claimed herein, is surprising, given the generally unstable nature of HA-based gels crosslinked with BDDE even without the addition of lidocaine.

Applicant files herewith a terminal disclaimer over co-pending U.S. Patent Application No. 12/393,768.

In view of the above, applicant respectfully submits that the presently claimed invention is novel and unobvious over the prior art of record, the application as a whole is in condition for allowance. Applicant respectfully requests a Notice of Allowance.

18

18438-59 (COR)

The Commissioner is hereby authorized to charge any fee which may be required in connection with this Amendment to Deposit Account No. 01-0885.


Dated:  June 14, 2012            Respectfully submitted,


                                /Linda Allyson Fox/_____
                                Linda Allyson Fox
                                Reg. No. 38,883
                                Attorney for Applicant


Please direct all inquiries and correspondence to:

Linda A. Fox, Esq.
Allergan, Inc.
2525 Dupont Drive, T2-7H
Irvine, California 92623-9534
Tel:  714.246-4758/Fax: 714.246-4249

# EXHIBIT D

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 12/393,884 | LEBRETON, PIERRE F. | |
| | Examiner | Art Unit | |
| | ALI SOROUSH | 1617 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to 06/14/2012.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are 23-32,34-36,38,40-53 and 55-67.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

      a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

         1. ☐ Certified copies of the priority documents have been received.

         2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

         3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

6. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).

7. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date See Continuation Sheet

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

7. ☐ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____.

/ALI SOROUSH/
Examiner, Art Unit 1617

**Continuation Sheet (PTOL-37)**                                    **Application No.  12/393,884**

Continuation of Attachment(s) 3. Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date: 03072012, 03302012, 06142012.

Application/Control Number: 12/393,884                                    Page 2
Art Unit: 1617

## DETAILED ACTION

### *Acknowledgement of Receipt*

Applicant's response filed on 09/29/2011 to the Office Action mailed on

05/31/2011 is acknowledged.

### *Claim Status*

Claims 23-32, 34-36, 38, 40-53 and 55-67 are pending.

Claims 1-22, 33, 37, and 39 were previously cancelled and claim 54 is cancelled.

Claims 40 and 55 are currently amended.

Claims 23-32, 34-36, 38, 40-53 and 55-67 have been examined.

Claims 23-32, 34-36, 38, 40-53 and 55-67 are allowed.

### *Priority*

Priority to applications 60/085956 filed on 08/04/2008, 61/087934 filed on

08/11/2008, and 61/096278 filed on 09/11/2008 is acknowledged.

### *Information Disclosure Statement*

The information disclosure statements (IDSs) submitted on 03/07/2012,

03/30/2012, and 06/14/2012 are in compliance with the provisions of 37 CFR 1.97.

Accordingly, the information disclosure statements have been considered by the

examiner.

### *Withdrawn Claim Rejections - 35 USC § 112*

### *Response to Applicant's Arguments*

The rejection of claim 40 under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention is withdrawn.

### *Claim Rejections - 35 USC § 103*

### *Response to Applicant's Arguments*

The rejection of claims 23-32, 35, 36, 38, and 40-50 under 35 U.S.C. 103(a) as being unpatentable over Lebreton (US Patent Application 2006/0194758 A1, Published 08/31/2006) in view of Calias et al. (US Patent 6521223 B1, Published 02/18/2003) is withdrawn in view of the unexpected results presented by Applicant.

The rejection of claims 34, 51-53 and 55-67 under 35 U.S.C. 103(a) as being unpatentable over Lebreton (US Patent Application 2006/0194758 A1, Published 08/31/2006) in view of Calias et al. (US Patent 6521223 B1, Published 02/18/2003) as applied to claims 23-32, 35, 36, 38, and 40-50 above, and further in view of Marko et al. (US Patent Application 2004/0101959 A1, Published 05/27/2004) is withdrawn in view of the claim amendments and unexpected results presented by Applicant.

Application/Control Number: 12/393,884                                    Page 4
Art Unit: 1617

## REASONS FOR ALLOWANCE

The following is an examiner's statement of reasons for allowance: Applicant

argues that one of ordinary skill in the art would have expected degradation of the

hyaluronic acid gel with addition of lidocaine during sterilization, as this was what was

known in the prior art. Applicant unexpectedly found that a hyaluronic acid gel cross-

linked, but not with a non-hyaluronic acid biopolymer, mixed with lidocaine and sterilized

does not degrade.

### *Conclusion*

Claims 23-32, 34-36, 38, 40-53 and 55-67 are allowed.

Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to ALI SOROUSH whose telephone number is (571)272-

9925.  The examiner can normally be reached on M-F (9am-6pm).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Fereydoun G. Sajjadi can be reached on (571)272-3311.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Application/Control Number: 12/393,884                              Page 5
Art Unit: 1617

      Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/ALI  SOROUSH/
Examiner, Art Unit 1617

July 15, 2012