IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALLERGAN USA, INC. and ) 
ALLERGAN INDUSTRIE SAS, )
 )
Plaintiffs, )
 )
v. ) C.A. No. 19-126-CFC
 )
 ) **JURY TRIAL DEMANDED**
PROLLENIUM US INC. and PROLLENIUM )
MEDICAL TECHNOLOGIES INC., )
 )
Defendants. )

## DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIM
## TO PLAINTIFFS' COMPLAINT

Defendants Prollenium US Inc. and Prollenium Medical Technologies Inc. ("Defendants"

or, collectively, "Prollenium"), by and through its undersigned counsel, hereby respond to the

Amended Complaint (D.I. 5) of Plaintiffs Allergan USA, Inc. and Allergan Industrie SAS

("Allergan" or "Plaintiffs") in the following Amended Answer and Counterclaim[1]:

## NATURE OF ACTION

1.       Prollenium admits that the Amended Complaint is styled as an action for

infringement of U.S. Patent No. 8,450,475 ("the '475 patent"), U.S. Patent No. 8,357,795 ("the

'795 patent"), U.S. Patent No. 8,822,676 ("the '676 patent"), U.S. Patent No. 9,089,519 ("the

'519 patent"), U.S. Patent No. 9,238,013 ("the '013 patent"), and U.S. Patent No. 9,358,322

("the '322 patent") (collectively, the "Asserted Patents") pursuant to the Patent Act.  Prollenium

denies that any purported infringement has occurred.

---

[1] This amendment is made under Fed. R. Civ. P. 15(a)(2) and with consent of the plaintiffs. This pleading supersedes the prior pleadings; accordingly, the plaintiffs' motion to dismiss and strike (D.I. 20) is moot. *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017); *Calloway v. Green Tree Servicing, LLC*, 599 F. Supp. 2d 543, 546 (D. Del. 2009).

## PARTIES

2.      Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

3.      Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

4.      Admitted.

5.      Admitted.

6.      Admitted.

## JURISDICTION AND VENUE

7.      Admitted.

8.      Admitted.

9.      Prollenium admits that it has placed products into the stream of commerce by shipping, importing, offering for sale and/or selling products in this district.  Prollenium denies that it infringes, or has infringed, any valid claim of any Asserted Patent.

10.      Denied.

11.      Admitted.

## BACKGROUND

### The Patents-In-Suit

12.      Prollenium admits that the '475 patent is titled "Hyaluronic Acid-Based Gels Including Lidocaine" and, on its face, indicates that it issued to Pierre F. Lebreton on May 28, 2013.  Prollenium admits that a true and accurate copy of the '475 patent is attached to the Amended Complaint as Exhibit A.  Prollenium otherwise denies the allegations in this paragraph.

13.    Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

14.    Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

15.    Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

16.    Prollenium admits that the '795 patent is titled "Hyaluronic Acid-Based Gels Including Lidocaine" and, on its face, indicates that it issued to Pierre F. Lebreton on January 22, 2013.  Prollenium admits that a copy of the '795 patent is attached to the Amended Complaint as Exhibit B.  Prollenium otherwise denies the allegations in this paragraph.

17.    Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

18.    Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

19.    Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

20.    Prollenium admits that the '676 patent is titled "Hyaluronic Acid-Based Gels Including Lidocaine" and, on its face, indicates that it issued to Pierre F. Lebreton on September 2, 2014.  Prollenium admits that a copy of the '676 patent is attached to the Amended Complaint as Exhibit C.  Prollenium denies the remaining allegations in this paragraph.

21.    Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

22.     Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

23.     Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

24.     Prollenium admits that the '519 patent is titled "Hyaluronic Acid-Based Gels Including Lidocaine" and, on its face, indicates that it issued to Pierre F. Lebreton on July 28, 2015.  Prollenium admits that a copy of the '519 patent is attached to the Amended Complaint as Exhibit D.  Prollenium denies the remaining allegations in this paragraph.

25.     Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

26.     Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

27.     Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

28.     Prollenium admits that the '013 patent is titled "Hyaluronic Acid-Based Gels Including Lidocaine" and, on its face, indicates that it issued to Pierre F. Lebreton on January 19, 2016.  Prollenium admits that a copy of the '013 patent is attached to the Amended Complaint as Exhibit E.  Prollenium otherwise denies the allegations in this paragraph.

29.     Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

30.     Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

31.     Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

32.     Prollenium admits that the '322 patent is titled "Hyaluronic Acid-Based Gels Including Lidocaine" and, on its face, indicates that it issued to Pierre F. Lebreton on June 7, 2016.  Prollenium admits that a copy of the '322 patent is attached to the Amended Complaint as Exhibit F.  Prollenium otherwise denies the allegations in this paragraph.

33.     Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

34.     Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

35.     Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies these allegations.

36.     Prollenium admits that the abstract of each of the aforementioned patents indicates that they are directed to dermal and subdermal fillers, based on hyaluronic acids and pharmaceutically acceptable salts thereof.  Prollenium admits that dermal fillers are compositions that can be injected into the skin to smooth wrinkles and creases.

37.     Prollenium admits that hyaluronic acid-based dermal and subdermal fillers can be injected into patients and can cause discomfort.  Prollenium further admits that anesthetic agents can alleviate the discomfort from injection.  Prollenium denies that any of the Asserted Patents were actual inventions of formulations for and/or methods of manufacturing hyaluronic acid-based compositions or fillers that include lidocaine.

38.     Prollenium admits that Teoxane S.A. filed petitions for *inter partes* review with the Patent Trial and Appeal Board seeking review of certain claims of the '475 patent and the

'795 patent.  Prollenium further admits that the Patent Trial and Appeal Board denied institution

of *inter partes* review due to Teoxane S.A.'s failure to demonstrate that certain primary prior art

references were "printed publications" within the meaning of 35 U.S.C. § 311(b).  Prollenium

denies the remaining allegations of this paragraph.

### Allergan's Hyaluronic Acid + Lidocaine Products

39.     Prollenium admits that Allergan is a developer, manufacturer, and distributor of

dermal filler products in the United States, including the products listed in this paragraph.

Prollenium is without information or knowledge sufficient to form a belief as to the truth or

falsity of the remaining allegations in this paragraph and therefore denies these allegations.

40.     Prollenium admits that Allergan's JUVEDÉRM® products are injectable

hyaluronic acid fillers that contain local anesthetic.  Prollenium further admits that the goal of

such fillers is to replace lost volume and temporarily correct the appearance of wrinkles and

creases.  Prollenium is without information or knowledge sufficient to form a belief as to the

truth or falsity of the remaining allegations in this paragraph and therefore denies these

allegations.

41.     Prollenium admits that Allergan has a webpage that list various Allergan products

along with a list of U.S. Patent numbers that Allergan alleges are covered by the respective

Allergan products.

### PROLLENIUM'S ACCUSED PRODUCTS

42.     Prollenium admits that Prollenium Medical Technologies Inc. exports to the

United States a dermal filler product named Revanesse® Versa+™.  Prollenium further admits

that Prollenium US Inc. offers to sell and sells in the United States a dermal filler product named

Revanesse® Versa+™.  Prollenium further admits that Revanesse® Versa+™ is an injectable

hyaluronic acid dermal filler that includes lidocaine and can be used in order to correct the appearance of facial wrinkles and creases.  Prollenium denies the remaining allegations in this paragraph.

43.     The statement in Paragraph 43 is not an allegation to which a response is necessary.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Prollenium admits that Prollenium US Inc. offers for sale and sells in the United States a dermal filler product named Revanesse® Versa+™.  Prollenium denies the remaining allegations in this paragraph.

58.     Prollenium admits that Prollenium Medical Technologies, Inc. manufactures its Revanesse® Versa+™ product in Canada.  Prollenium further admits that Prollenium US Inc.

offers for sale and sells the Revanesse® Versa+™ product in the United States.  Prollenium

denies the remaining allegations of this paragraph.

    59.    Denied.

## COUNT I
### (Alleged Infringement of the '475 Patent Under 35 U.S.C. § 271)

    60.    Prollenium incorporates by reference its responses to the preceding paragraphs 1

to 59 as though fully set forth herein.

    61.    Denied.

    62.    Denied.

    63.    Prollenium admits that it does not have a license to or authority from Plaintiff to

practice the '475 patent.  Prollenium denies the remaining allegations of this paragraph.

    64.    Prollenium admits that it has been aware of the '475 Patent since December 17,

2018.  Prollenium is without information or knowledge sufficient to form a belief as to the truth

or falsity of the remaining allegations in this paragraph, at least because it does not specify what

is meant by the phrase "at all relevant times," and therefore denies these allegations.

    65.    Denied.

    66.    Denied.

    67.    Denied.

## COUNT II
### (Alleged Infringement of the '795 Patent Under 35 U.S.C. § 271)

    68.    Prollenium incorporates by reference its responses to the preceding paragraphs 1

to 67 as though fully set forth herein.

    69.    Denied.

    70.    Denied.

71.     Prollenium admits that it does not have a license to or authorization from Plaintiff to practice the '795 patent.  Prollenium denies the remaining allegations of this paragraph.

72.     Prollenium admits that it has been aware of the '795 Patent since December 17, 2018.  Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph, and therefore denies these allegations.

73.     Denied.

74.     Denied.

75.     Denied.

## COUNT III
### (Alleged Infringement of the '676 Patent Under 35 U.S.C. § 271)

76.     Prollenium incorporates by reference its responses to the preceding paragraphs 1 to 75 as though fully set forth herein.

77.     Denied.

78.     Denied.

79.     Prollenium admits that it does not have a license to or authorization from Plaintiff to practice the '676 patent.  Prollenium denies the remaining allegations of this paragraph.

80.     Prollenium admits that it has been aware of the '676 Patent since December 17, 2018.  Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph, and therefore denies these allegations.

81.     Denied.

82.     Denied.

83.     Denied.

## COUNT IV
### (Alleged Infringement of the '519 Patent Under 35 U.S.C. § 271)

84.     Prollenium incorporates by reference its responses to the preceding paragraphs 1 to 83 as though fully set forth herein.

85.     Denied.

86.     Denied.

87.     Prollenium admits that it does not have a license to or authorization from Plaintiff to practice the '519 patent.  Prollenium denies the remaining allegations of this paragraph.

88.     Prollenium admits that it has been aware of the '519 Patent since December 17, 2018.  Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph, and therefore denies these allegations.

89.     Denied.

90.     Denied.

91.     Denied.

## COUNT V
### (Alleged Infringement of the '013 Patent Under 35 U.S.C. § 271)

92.      Prollenium incorporates by reference its responses to the preceding paragraphs 1 to 91 as though fully set forth herein.

93.     Denied.

94.     Denied.

95.     Prollenium admits that it does not have a license to or authorization from Plaintiff to practice the '013 patent.  Prollenium denies the remaining allegations of this paragraph.

96.    Prollenium admits that it has been aware of the '013 Patent since December 17, 2018.  Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph, and therefore denies these allegations.

97.    Denied.

98.    Denied.

99.    Denied.

<u>**COUNT VI**</u>
**(Alleged Infringement of the '322 Patent Under 35 U.S.C. § 271)**

100.    Prollenium incorporates by reference its responses to the preceding paragraphs 1 to 99 as though fully set forth herein.

101.    Denied.

102.    Denied.

103.    Prollenium admits that it does not have a license to or authorization from Plaintiff to practice the '322 patent.  Prollenium denies the remaining allegations of this paragraph.

104.    Prollenium admits that it has been aware of the '322 Patent since December 17, 2018.  Prollenium is without information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph, and therefore denies these allegations.

105.    Denied.

106.    Denied.

107.    Denied.

**<u>GENERAL DENIAL</u>**

Unless expressly admitted herein, Prollenium denies each and every allegation contained in Paragraphs 1-107 of Allergan's Amended Complaint and denies that Allergan is entitled to any of the relief requested in its Prayer for Relief.

## **AFFIRMATIVE DEFENSES**

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, Prollenium asserts the following affirmative defenses to Allergan's allegations in the Amended Complaint.  By alleging the affirmative defenses below, Prollenium does not admit that it has the burden of proof on such matters or that any of the following defenses are not already at issue by virtue of the forgoing responses.

### **First Defense (Invalidity)**

All claims of the Asserted Patents are invalid and/or unenforceable for failing to satisfy one or more of the requirements for patentability under Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### **Second Defense (Non-Infringement)**

Prollenium has not infringed, and does not infringe, literally, or by the doctrine of equivalents, any valid and enforceable claim of the Asserted Patents, either directly or indirectly.

### **Third Defense (Failure to state a claim)**

The Amended Complaint fails to state a claim upon which relief can be granted.  By way of example only, Allergan has at least failed to state any plausible claim for direct infringement or inducement of patent infringement.

### **Fourth Defense (Inequitable conduct)**

For at least the reasons set forth in more detail in Paragraph's 1–32 and 69–79 of Prollenium's Counterclaim below, the Asserted Patents are unenforceable as a result of Allergan's inequitable conduct before the United States Patent and Trademark Office.

### **Fifth Defense (Unclean Hands)**

Allergan's claims, or some of them, are barred by the doctrine of unclean hands.

### Sixth Defense (No injunctive relief)

Allergan is not entitled to injunctive relief because any purported injury is not immediate or irreparable, it has an adequate remedy available at law for any claims that can be proven, and the balance of hardship and the public interest do not favor injunctive relief.

### Seventh Defense (Limitation on Damages and Costs)

Allergan's claims for relief are limited by Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 286, 287, and/or 288.

### Eighth Defense (No Willful Infringement)

Allergan is not entitled to enhanced damages for willful infringement because Prollenium has not engaged in any conduct that meets the applicable standard for willful infringement.

### Ninth Defense (No Exceptional Case)

Allergan cannot prove that this is an exceptional case justifying an award of attorneys' fees and/or costs pursuant to 35 U.S.C. § 285.

## RESERVATION OF RIGHTS

Prollenium reserves the right to add any additional defense or counterclaim that may be revealed during the course of discovery.

## DEFENDANTS' FIRST AMENDED COUNTERCLAIM

Defendants and Counterclaim-Plaintiffs Prollenium US Inc. and Prollenium Medical Technologies Inc. ("Prollenium" or "Defendants") bring the following First Amended Counterclaim for declaratory judgment against Plaintiffs and Counterclaim-Defendants Allergan USA, Inc. and Allergan Industrie SAS ("Allergan" or "Plaintiffs") and allege as follows:

## NATURE OF THE ACTION

1.      This counterclaim for declaratory judgment arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*., and under the federal Declaratory Judgment Act, 28 U.S.C.

§§ 2201–02.  Prollenium requests a declaration that the claims of each of U.S. Patent No. 8,450,475 ("the '475 patent"); U.S. Patent No. 8,357,795 ("the '795 patent"); U.S. Patent No. 8,822,676 ("the '676 patent"); U.S. Patent No. 9,089,519 ("the '519 patent"); U.S. Patent No. 9,238,013 ("the '013 patent"); and U.S. Patent No. 9,358,322 ("the '322 patent") (collectively, the "Asserted Patents") are invalid and that the Asserted Patents are unenforceable.

## PARTIES

2.      Prollenium US Inc. is a corporation organized and existing under the laws of the State of Delaware and has a principal place of business at 9121 Anson Way, Suite 200, Raleigh, NC 27615.

3.      Prollenium Medical Technologies is foreign corporation have a principal place of business at 138 Industrial Parkway North, Aurora Ontario, L4G 4C3.

4.      Based on its assertions, Defendant Allergan USA, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 5 Giralda Farms, Madison, New Jersey 07940.

5.      Based on its assertions, Defendant Allergan Industrie SAS is a company incorporated in France, with a principal place of business at Route De Promery, 254 ZA Pre Mairy, 74370 Pringy, France.

## JURISDICTION AND VENUE

6.      This counterclaim arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, and under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

7.      Allergan has consented to the personal jurisdiction of this Court as well as venue in this judicial district by commencing its action for patent infringement in this judicial district.

# BACKGROUND

8.      Allergan generates hundreds of millions of dollars of revenue from sales of its

Juvederm Collection of filler products utilizing Hyaluronic Acid ("HA") compositions

crosslinked with BDDE and containing lidocaine.  Allergan sold more than $1.5 billion of

products in the Juvederm Collection from 2016 to 2018.  Allergan aggressively uses the courts to

enforce its purported rights in the Asserted Patents and thus maintain this revenue stream even

though the Asserted Patents are invalid and unenforceable.

### *The Purported Inventions Were Well-known in the Prior Art*

9.      The claims of the Asserted Patents should not have issued because they are either

invalid as anticipated by prior art and/or obvious modifications of prior art.

10.      Crosslinked hyaluronic acid ("HA") dermal fillers were well known in the art

prior to August 4, 2008, including 1,4-butanediol diglycidyl ether (BDDE) crosslinked HA

dermal fillers.  Further, because these HA dermal fillers were administered via subcutaneous

injection, pain associated with such injections was a well-known side effect associated with these

products.

11.      In response to this well-known side effect associated with HA dermal fillers,

persons of ordinary skill in the art were motivated to include a well-known local anesthetic, such

as lidocaine, to these dermal fillers to solve the problem of pain and discomfort during

subcutaneous injection.  Accordingly, by August of 2008, several lidocaine-containing HA

dermal fillers had already been developed and numerous reports of using lidocaine in crosslinked

HA fillers had appeared in scientific literature.

12.      The claims of the Asserted Patents are anticipated under 35 U.S.C. § 102 and/or

obvious under 35 U.S.C. § 103 because each and every element of each claim of the Asserted

Patents was disclosed in the prior art before the earliest possible priority date of the Asserted

Patents.  Further, the purported inventions of the claims of the Asserted Patents were in public

use and/or on sale more than a year prior to the dates of the applications for the Asserted Patents.

With respect to obviousness, a person of ordinary skill in the art at the time of the invention

would have been motivated to combine the prior art and would have had a reasonable

expectation of success in doing so.  Relevant prior art include at least:  (a) U.S. Publication No.

2006/0194758; (b) U.S. Publication No. 2005/0136122; (c) WO 2005/067944; (d) U.S.

Publication No. 2005/0271729; (e) U.S. Publication No. 2006/0040894; (f) U.S. Patent No.

6,521,223; (g) U.S. Publication No. 2004/0101959; (h) Brian Kinney, *Injecting Puragen Plus

into the Nasolabial Folds: Preliminary Observations of FDA Trial*, Aesthetic Surgery Journal,

Nov. 1, 2006; and/or (i) physicians' practice of mixing lidocaine into HA dermal fillers

immediately before injection.

### Material Information Was Misrepresented to the Patent Office

13.     Allergan employee and inventor Pierre Lebreton ("Lebreton") filed U.S.

Application No. 12/393,884 on February 26, 2009 with claims directed towards BDDE-

crosslinked HA compositions that contained lidocaine.  U.S. Application No. 12/393,884 is the

parent application of the Asserted Patents.

14.     The Examiner ultimately rejected these claims as obvious in view of prior art that

taught BDDE-crosslinked HA dermal fillers in view of other references that disclosed the

addition of lidocaine to other dermal fillers.

15.     In rejecting the claims of U.S. Application No. 12/393,884, the Examiner stated

that "[i]t would have been prima facie obvious to one of ordinary skill in the art at the time of the

instant invention to add lidocaine to the hydrogel composition of Lebreton.  One would have

been motivated to do so in order to provide lidocaine, an anesthetic, to the tissue at the site of surgery.  It would have been obvious to one [of] ordinary skill in the art at the time of the instant invention to add the lidocaine to the hydrogel during the homogenization in order to provide a hydrogel which as [sic] a lidocaine homogenously mixed throughout the gel."  Ex. A (Dec. 27, 2011, Final Rejection at 7-8).

16.     In response to this rejection, and in an effort to overcome the prior art, Lebreton argued that a person of skill in the art would not have been motivated to combine these HA dermal fillers with lidocaine because they would have expected that such a combination would have had negative effects, such as unacceptable viscosity reduction and degradation.

17.     In support of this argument, Lebreton submitted a signed declaration (the "Inventor Declaration") to the United States Patent and Trademark Office that was dated May 2, 2012 and filed on or around June 14, 2012 (Ex. B).  Lebreton stated in the Inventor Declaration that it was believed at the time of the invention that adding lidocaine to HA compositions would cause degradation of the HA prior to injection.  Lebreton also stated in the Inventor Declaration that it was not known at the time whether HA compositions with lidocaine were stable after high temperature sterilization when stored.

18.     By way of example, the Inventor Declaration states that: "[i]t was believed that adding lidocaine to hyaluronic acid gel compositions during manufacturing caused degradation of the hyaluronic acid prior to injection of the HA as a dermal filler."  Ex. B at ¶ 5.  This statement by Lebreton was a misrepresentation to the Patent Office because it is demonstrably false.

19.     The Inventor Declaration also states that "[i]t was believed that lidocaine caused degradation of HA gel compositions during high temperature sterilization."  Ex. B at ¶ 6.  This

statement by Lebreton was a misrepresentation to the Patent Office because it is demonstrably false.

20.     The Inventor Declaration also states that "[i]t was not known whether HA compositions comprising lidocaine were stable or not after high temperature sterilization when places in storage for any significant length of time."  Ex. B at ¶ 7.  This statement by Lebreton was a misrepresentation to the Patent Office because it is demonstrably false.

21.     The Inventor Declaration also states that "[i]t was also believed that the instability of HA described above would have caused a viscosity reduction of the HA that would make it unsuitable for soft tissue filling applications."  Ex. B at ¶ 8.  This statement by Lebreton was a misrepresentation to the Patent Office because it is demonstrably false.

22.     The Inventor Declaration also states that "[b]ased upon the facts set forth above, a person of ordinary skill in the art would have expected that a dermal filler comprising hyaluronic acid and lidocaine would not have remained sufficiently stable to be useful as a soft tissue filler."  Ex. B at ¶ 9.  This statement by Lebreton was a misrepresentation to the Patent Office because it is demonstrably false.

23.     The Inventor Declaration also states that "[i]t was not appreciated that a dermal filler comprising a cohesive gel of hyaluronic acid makes it possible for lidocaine to be combined with hyaluronic acid in a gel that is sufficiently stable to be useful as a soft tissue filler."  Ex. B at ¶ 10.  This statement by Lebreton was a misrepresentation to the Patent Office because it is demonstrably false.

24.     The Inventor Declaration also states that "[t]o my knowledge, it was a surprising and unexpected discovery, not appreciated prior to the present invention, that certain cohesive HA gels, as defined in the application, when mixed with lidocaine, could be made to be heat and

shelf stable." Ex. B at ¶ 15.  This statement by Lebreton was a misrepresentation to the Patent

Office because it is demonstrably false.

25.     Citing to the Inventor Declaration, the Applicant argued to the Examiner that the

claimed invention was "a surprising and unexpected discovery, not appreciated prior to the

present invention" and thus would not have been obvious at the time the invention was made to a

person of ordinary skill in the art.  Ex. C (June 14, 2012, Response to Final Office Action, at 12–

15).

26.     As a result of the Inventor Declaration as well as the Applicant's related

arguments, on August 6, 2012, the Examiner allowed original claims 23-32, 34-36, 38, 40-50,

and 55-67, specifically finding that Lebreton's assertions of unexpected results were sufficient to

overcome the rejection.  Ex. D (August 6, 2012, Notice of Allowance and Fees Due at 3-4)

("Applicant unexpectedly found that a hyaluronic acid gel cross-linked, but not with a non-

hyaluronic acid biopolymer, mixed with lidocaine and sterilized does not degrade.").  In other

words, but for the statements made in the Declaration by Lebreton, the Examiner would not have

allowed, and in fact had already rejected, the above-mentioned claims.

27.     The Examiner withdrew his rejections and allowed the claims "in view of the

claim amendments and unexpected results presented by Applicant." Ex. D, at 3. Thus Lebreton's

factual representations were material.

28.     The Inventor Declaration, however, did not cite to any prior art reference or

otherwise corroborate the assertions contained therein.

29.     Notably, multiple statements contained in the Inventor Declaration, as presented

above, are demonstrably false.

30.     At the time of the invention, it was well-known to persons of ordinary skill in the art that crosslinked HA-lidocaine fillers performed equally as well as, if not better than, crosslinked HA dermal fillers not containing lidocaine.

31.     In fact, provisional application (No. 61/085,956), for which Lebreton is a named inventor and to which the Asserted Patents claim priority, admitted that U.S. Publication No. 2005/0136122 disclosed that adding lidocaine to crosslinked HA dermal fillers performed equally as well as crosslinked HA dermal fillers without lidocaine.  By the time the Inventor Declaration was submitted to the PTO, however, this reference to the prior art had been removed from the non-provisional application (U.S. Application No. 12/393,884).

32.     The Applicant's removal of what was known in the prior art from U.S. Application No. 12/393,884 demonstrates not only that the statements in the Inventor Declaration by Lebreton are false, but also that Lebreton knew information contrary to the statements he made in his declaration and that the misrepresentations in the Inventor Declaration and the related assertions by the Applicant were made with the intent to deceive the Patent Office.

**<ins>COUNT ONE</ins>**
**<ins>(Declaration of Invalidity of all claims of the '475 patent)</ins>**

33.     Prollenium realleges and incorporates by reference the foregoing paragraphs of this Amended Counterclaim.

34.     Allergan brought this action alleging infringement of the '475 patent by Prollenium.  Prollenium denies that it infringes any valid and enforceable claim of the '475 patent and contends that the claims of the '475 patent are invalid.  For at least these reasons, there exists an actual controversy between the parties regarding the validity of the claims of the '475 patent.

35.     Each and every claim of the '475 patent is invalid for failing to satisfy one or more of the conditions for patentability, or otherwise failing to comply with the requirements set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

36.     A judicial declaration is necessary and appropriate so that Prollenium can ascertain its rights regarding whether the claims of the '475 patent are invalid.

37.     The existence of this dispute creates a justiciable controversy between the parties, which this Court may hear pursuant to 28 U.S.C. § 2201(a).  The Court may further grant additional relief, including injunctive relief and damages, pursuant to 28 U.S.C. § 2202.

38.     This is an exceptional case under 35 U.S.C. § 285 because Allergan filed its Complaint with knowledge of the facts stated in this Counterclaim.

**COUNT TWO**
**(Declaration of Invalidity of all claims of the '795 patent)**

39.     Prollenium realleges and incorporates by reference the foregoing paragraphs of this Amended Counterclaim.

40.     Allergan brought this action alleging infringement of the '795 patent by Prollenium.  Prollenium denies that it infringes any valid and enforceable claim of the '795 patent and contends that the claims of the '795 patent are invalid.  For at least these reasons, there exists an actual controversy between the parties regarding the validity of the claims of the '795 patent.

41.     Each and every claim of the '795 patent is invalid for failing to satisfy one or more of the conditions for patentability, or otherwise failing to comply with the requirements set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

42.     A judicial declaration is necessary and appropriate so that Prollenium can ascertain its rights regarding whether the claims of the '795 patent are invalid.

43.     The existence of this dispute creates a justiciable controversy between the parties, which this Court may hear pursuant to 28 U.S.C. § 2201(a).  The Court may further grant additional relief, including injunctive relief and damages, pursuant to 28 U.S.C. § 2202.

44.     This is an exceptional case under 35 U.S.C. § 285 because Allergan filed its Complaint with knowledge of the facts stated in this Counterclaim.

<u>**COUNT THREE**</u>
<u>**(Declaration of Invalidity of all claims of the '676 patent)**</u>

45.     Prollenium realleges and incorporates by reference the foregoing paragraphs of this Amended Counterclaim.

46.     Allergan brought this action alleging infringement of the '676 patent by Prollenium.  Prollenium denies that it infringes any valid and enforceable claim of the '676 patent and contends that the claims of the '676 patent are invalid.  For at least these reasons, there exists an actual controversy between the parties regarding the validity of the claims of the '676 patent.

47.     Each and every claim of the '676 patent is invalid for failing to satisfy one or more of the conditions for patentability, or otherwise failing to comply with the requirements set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

48.     A judicial declaration is necessary and appropriate so that Prollenium can ascertain its rights regarding whether the claims of the '676 patent are invalid.

49.     The existence of this dispute creates a justiciable controversy between the parties, which this Court may hear pursuant to 28 U.S.C. § 2201(a).  The Court may further grant additional relief, including injunctive relief and damages, pursuant to 28 U.S.C. § 2202.

50.     This is an exceptional case under 35 U.S.C. § 285 because Allergan filed its Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT FOUR
### (Declaration of Invalidity of all claims of the '519 patent)

51.     Prollenium realleges and incorporates by reference the foregoing paragraphs of this Amended Counterclaim.

52.     Allergan brought this action alleging infringement of the '519 patent by Prollenium.  Prollenium denies that it infringes any valid and enforceable claim of the '519 patent and contends that the claims of the '519 patent are invalid.  For at least these reasons, there exists an actual controversy between the parties regarding the validity of the claims of the '519 patent.

53.     Each and every claim of the '519 patent is invalid for failing to satisfy one or more of the conditions for patentability, or otherwise failing to comply with the requirements set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

54.     A judicial declaration is necessary and appropriate so that Prollenium can ascertain its rights regarding whether the claims of the '519 patent are invalid.

55.     The existence of this dispute creates a justiciable controversy between the parties, which this Court may hear pursuant to 28 U.S.C. § 2201(a).  The Court may further grant additional relief, including injunctive relief and damages, pursuant to 28 U.S.C. § 2202.

56.     This is an exceptional case under 35 U.S.C. § 285 because Allergan filed its Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT FIVE
### (Declaration of Invalidity of all claims of the '013 patent)

57.     Prollenium realleges and incorporates by reference the foregoing paragraphs of this Amended Counterclaim.

58.     Allergan brought this action alleging infringement of the '013 patent by Prollenium.  Prollenium denies that it infringes any valid and enforceable claim of the '013 patent and contends that the claims of the '013 patent are invalid.  For at least these reasons, there exists an actual controversy between the parties regarding the validity of the claims of the '013 patent.

59.     Each and every claim of the '013 patent is invalid for failing to satisfy one or more of the conditions for patentability, or otherwise failing to comply with the requirements set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

60.     A judicial declaration is necessary and appropriate so that Prollenium can ascertain its rights regarding whether the claims of the '013 patent are invalid.

61.     The existence of this dispute creates a justiciable controversy between the parties, which this Court may hear pursuant to 28 U.S.C. § 2201(a).  The Court may further grant additional relief, including injunctive relief and damages, pursuant to 28 U.S.C. § 2202.

62.     This is an exceptional case under 35 U.S.C. § 285 because Allergan filed its Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT SIX
### (Declaration of Invalidity of all claims of the '322 patent)

63.     Prollenium realleges and incorporates by reference the foregoing paragraphs of this Amended Counterclaim.

64.     Allergan brought this action alleging infringement of the '322 patent by Prollenium.  Prollenium denies that it infringes any valid and enforceable claim of the '322 patent and contends that the claims of the '322 patent are invalid.  For at least these reasons, there exists an actual controversy between the parties regarding the validity of the claims of the '322 patent.

65.     Each and every claim of the '322 patent is invalid for failing to satisfy one or more of the conditions for patentability, or otherwise failing to comply with the requirements set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

66.     A judicial declaration is necessary and appropriate so that Prollenium can ascertain its rights regarding whether the claims of the '322 patent are invalid.

67.     The existence of this dispute creates a justiciable controversy between the parties, which this Court may hear pursuant to 28 U.S.C. § 2201(a).  The Court may further grant additional relief, including injunctive relief and damages, pursuant to 28 U.S.C. § 2202.

68.     This is an exceptional case under 35 U.S.C. § 285 because Allergan filed its Complaint with knowledge of the facts stated in this Counterclaim.

**COUNT SEVEN**
**(Declaration of Unenforceability of all the Asserted Patents for Inequitable Conduct)**

69.     Prollenium realleges and incorporates by reference the foregoing paragraphs of this Amended Counterclaim.

70.     Each individual associated with the filing and prosecution of a patent application has an absolute duty of candor and good faith in dealing with the United States Patent and Trademark Office ("PTO").  37 C.F.R. § 1.56.  A breach of this duty may constitute inequitable conduct or "fraud on the PTO," rendering the patent unenforceable.

71.     In submitting the Inventor Declaration containing materially false information, Lebreton misrepresented and/or omitted material information regarding the prior art with the specific intent to deceive the PTO.

72.     The disclosure of contrary information in Allergan's provisional application (No. 61/085,956), for which Lebreton is a named inventor and to which the Asserted Patents claim

priority, demonstrates that Lebreton knew that the statements in the Inventor Declaration were false.

73.     The removal of what was known in the prior art from U.S. Application No. 12/393,884, further shows that the misstatements in the Inventor Declaration were made with the intention to deceive the Examiner, and in fact did deceive the Examiner into allowing the claims despite the teachings of the prior art.

74.     Prior to submitting the Inventor Declaration, the claims of U.S. Application No. 12/393,884 had been rejected by the Examiner, finding that it would have been obvious to one of ordinary skill in the art at the time of the invention to add lidocaine to crosslinked hyaluronic acid dermal fillers.

75.     But for the misrepresentations in the Inventor Declaration, the Examiner would have, and in fact already had, rejected the claims of U.S. Application No. 12/393,884.

76.     Each of the Asserted Patents has been allowed because of the same knowingly false statements of unexpected results by Inventor Lebreton. For example, during the prosecution of the application that eventually issued as the '884 patent, the Examiner stated in a September 9, 2015, Notice of Allowance: "Applicant provided unexpected results when combining HA crosslinked with BDDE with **lidocaine in a submission in the parent application 12/393,884 (now patent 8357795)**. … **Applicant argued in the parent application** that they unexpectedly found that when lidocaine was added and the HA crosslinked gel was sterilized it was stable (response filed on 06/14/2012, pp. 14-18).  **Therefore, claims 14-17 are allowed**." (emphasis added). As another example, in the February 5, 2016, Notice of Allowance for the application that eventually issued as the '322 patent, the Examiner stated his reason for allowing the claims as: "Applicant has shown that the combination of crosslinked hyaluronic acid and lidocaine are

stable when exposed to high temperatures necessary in sterilizing the composition (**See**

**unexpected results arguments in copending application 12/393768** [the application that

eventually issued as the '475 patent]. **For the foregoing reasons claims 1, 2, 6, and 11 are**

**allowed**." (emphasis added). Thus, each of the Asserted Patents were obtained based on the same

conduct by the Applicant and Inventor Lebreton.

77.     The Asserted Patents were obtained as a result of inequitable conduct before the

PTO.  As a result, all of the Asserted Patents are unenforceable.

78.     A judicial declaration is necessary and appropriate so that Prollenium can

ascertain its rights regarding whether the Asserted Patents are unenforceable.

79.     The existence of this dispute creates a justiciable controversy between the parties,

which this Court may hear pursuant to 28 U.S.C. § 2201(a).  The Court may further grant

additional relief, including injunctive relief and damages, pursuant to 28 U.S.C. § 2202.

## JURY DEMAND

Prollenium respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Prollenium prays for the following relief:

A.     Dismissal of the Amended Complaint with prejudice, denying each and every

prayer for relief contained therein;

B.     A declaratory judgment that each and every claim of the '475 patent is invalid;

C.     A declaratory judgment that each and every claim of the '795 patent is invalid;

D.     A declaratory judgment that each and every claim of the '676 patent is invalid;

E.     A declaratory judgment that each and every claim of the '519 patent is invalid;

F.     A declaratory judgment that each and every claim of the '013 patent is invalid;

G.      A declaratory judgment that each and every claim of the '322 patent is invalid;

H.      A declaratory judgment that the Asserted Patents are unenforceable due to

inequitable conduct before the United States Patent & Trademark Office;

I.      An order awarding Prollenium its costs and expenses;

J.      An order declaring this to be an exceptional case and, pursuant to 35 U.S.C.

§ 285, awarding Prollenium its reasonable attorneys' fees;

K.      Such other further relief as the Court deems just and proper.

ASHBY & GEDDES

/s/ Andrew C. Mayo
_____
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*

*Of Counsel:*

John W. Harbin
Gregory J. Carlin
Warren Thomas
Robert J. Leonard
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, GA  30309
(404) 645-7700

Dated:  July 15, 2019