IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALLERGAN USA, INC. and ALLERGAN INDUSTRIE SAS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-126 (CFC) (SRF) |
| PROLLENIUM US INC. and PROLLENIUM MEDICAL TECHNOLOGIES INC., | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS COUNT VII OF DEFENDANTS' COUNTERCLAIM
AND STRIKE DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE**

<div style="margin-left:40%">

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
JBlumenfeld@MNAT.com
JTigan@MNAT.com

*Attorneys for Plaintiffs Allergan USA, Inc. and
Allergan Industrie SAS*

</div>

OF COUNSEL:

Gary E. Hood
Mark T. Deming
Randal S. Alexander
Enes Ovcina
POLSINELLI PC
150 North Riverside Plaza, Suite 3000
Chicago, Illinois 60606
(312) 819-1900

August 12, 2019

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

I. INTRODUCTION ...................................................................................... 1

II. NATURE AND STAGE OF PROCEEDINGS ................................................. 2

III. SUMMARY OF ARGUMENT ...................................................................... 3

IV. STATEMENT OF FACTS ............................................................................ 5

    A. Prosecution of the Patents-in-Suit.......................................................... 5

    B. Prollenium's Inequitable Conduct Counterclaim and Affirmative Defense........... 8

V. LEGAL STANDARD OF REVIEW ............................................................. 11

    A. Federal Rule of Civil Procedure 12(b)(6). ............................................. 11

    B. Federal Rule of Civil Procedure 12(f). .................................................. 12

VI. ARGUMENT ............................................................................................. 12

    A. Prollenium's Inequitable Conduct Counterclaim Should Be Dismissed. ............. 12

        1. Prollenium Does Not Allege An Omission or Misrepresentation. ........... 13

        2. Prollenium Fails to Identify Where and What Information Was Supposedly Misrepresented and/or Omitted from the PTO...................... 14

        3. Prollenium Fails to Identify How Information was Misrepresented To and/or Omitted from the PTO Would Have Been Material. ............... 15

        4. Prollenium Fails to Plead Specific Intent.................................................. 16

    B. Prollenium's Inequitable Conduct Affirmative Defense Should Also Be Stricken. .................................................................................................. 17

VII. CONCLUSION............................................................................................. 18

i

## TABLE OF AUTHORITIES

**Cases**                                                                                          Page(s)

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)........................................................................................................11

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols., L.L.C.*,
    525 F.3d 1353 (Fed. Cir. 2008)........................................................................................5

*ESCO Corp. v. Cashman Equip. Co.*,
    158 F. Supp. 3d 1051, 1065 (D. Nev. 2016).............................................................13, 16

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)............................................................................ *passim*

*Fiskars, Inc. v. Hunt Mfg. Co.*,
    221 F.3d 1318 (Fed. Cir. 2000)......................................................................................3, 13

*LifeScan, Inc. v. Home Diagnostics, Inc.*,
    103 F. Supp. 2d 379 (D. Del. 2000)................................................................................14

*MPHJ Tech. Investments, LLC v. Ricoh Ams. Corp.*,
    847 F.3d 1363 (Fed. Cir. 2017)......................................................................................5, 7

*Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*,
    C. A. No. 17-1353-LPS, 2019 WL 668843 (D. Del. Feb. 19, 2019).............................4, 13, 14

*Senju Pharmaceutical Co. v. Apotex, Inc.*,
    921 F. Supp. 2d 297 (D. Del. 2013).........................................................................12, 16, 17

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
    C. A. No. 12-441-RGA, 2014 WL 2622240 (D. Del. June 11, 2014)....................................15

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011)......................................................................................3, 5, 12

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
    C. A. No. 09-955-LPS-CJB, 2012 WL 600715 (D. Del. Feb. 3, 2012)....................................17

*XpertUniverse, Inc. v. Cisco Systems, Inc.*,
    868 F. Supp. 2d 376 (D. Del. 2012)...........................................................................16, 17

**Other Authorities**

Federal Rule of Civil Procedure 9 ..............................................................................4, 11, 12, 15

Federal Rule of Civil Procedure 12 .................................................................................11, 12, 17

## I.      INTRODUCTION

Prollenium's inequitable conduct counterclaim should be stricken for failing to meet the well-established pleading standard.   That Prollenium attempted a second time to plead inequitable conduct after receiving Allergan's earlier motion to dismiss, rather than simply respond to the motion, underscores the threadbare nature of its claim.

An inequitable conduct claim requires the allegation of egregious conduct, which, if not stricken at the outset of a case, implicates grave consequences throughout the course of a patent infringement action.   Before subjecting a patentee to such scrutiny, the challenger must plead facts with heightened particularity sufficient to show (1) specific intent to mislead the PTO; and (2) but-for materiality, i.e., that specific claims would not have otherwise issued.   Prollenium's allegations fall far short.

First, there was no omission or material misrepresentation.   The prior art reference that Prollenium contends was withheld and which supposedly proves that the inventor's declaration was misleading, was, in fact, submitted to the PTO.   Moreover, arguments to distinguish an invention from disclosed prior art cannot constitute inequitable conduct as a matter of law. Second, Prollenium's flawed theory cannot rise to the level of "but-for materiality"—not only was the allegedly "removed" reference actually before the PTO, but it also does not demonstrate that the inventor's declaration was false.   Third, Prollenium fails to plead any facts from which a factfinder could reasonably infer that any individual made a *knowingly* false statement or material omission during the prosecution of the patents-in-suit.

For the same reasons, Prollenium's affirmative defense of inequitable conduct fails. Therefore, Plaintiffs respectfully request that the Court dismiss Count VII of Prollenium's

counterclaims and strike its fourth affirmative defense from its Amended Answer and Counterclaim.

## II.     NATURE AND STAGE OF PROCEEDINGS

Allergan markets, among other things, dermal fillers—*i.e.*, injectable gels that add volume to the skin to reduce the appearance of wrinkles.  Among these products is Allergan's family of JUVEDÉRM® Products, injectable hyaluronic acid gels that contain a small quantity of local anesthetic, lidocaine.  Allergan's JUVEDÉRM® Products generate annual revenues in the United States of more than $500 million.

Developing assets like the JUVEDÉRM® Products requires substantial investments of time and resources.  Allergan's JUVEDÉRM® Products, and the valuable inventions embodied in these products, are covered by, among other rights, U.S. Patent Nos. 8,357,795 ("the '795 patent"), 8,450,475, 8,822,676, 9,089,519, 9,238,013, and 9,358,322 (collectively, "the patents-in-suit").

Defendant Prollenium markets a line of dermal filler products known as Revanesse Versa+, which are also injectable hyaluronic acid gels that contain a small quantity of lidocaine. Prollenium launched Revanesse Versa+ in December 2018.  Allergan filed this action on January 22, 2019 (D.I. 1). Allergan alleges that the Revanesse Versa+ products infringe the patents-in-suit.

On May 6, 2019, Prollenium filed its Answer, Affirmative Defenses, and Counterclaims. (D.I. 11).  Prollenium's fourth affirmative defense and Count VII of its counterclaims purported to allege that the patents-in-suit are unenforceable due to inequitable conduct before the PTO.  In essence, Prollenium contended that Allergan duped the PTO into issuing the six patents-in-suit

by submitting evidence about the surprising stability characteristics of its new formulation and by "removing" discussion of a prior art reference that has been repeatedly cited to the PTO.

Allergan filed a Motion to Dismiss Prollenium's fourth affirmative defense and Count VII of its counterclaims (D.I. 20). On July 15, 2019, Prollenium filed its Amended Answer and Counterclaim (D.I. 29). Prollenium's fourth affirmative defense and Count VII of its amended counterclaim still allege that the patents-in-suit are unenforceable due to inequitable conduct before the PTO. As before, Prollenium contends that Allergan misled the PTO into issuing the six patents-in-suit by submitting allegedly misleading evidence about the surprising characteristics of its new formulation. Prollenium now contends that this evidence "is demonstrably false" because the discussion of a prior art reference was "removed" from subsequently filed applications. A major flaw in Prollenium's revised theory, though, remains: the prior art reference was—and has been—repeatedly cited to the PTO.

## III.   SUMMARY OF ARGUMENT

1.      To state a claim for inequitable conduct, one must allege a misrepresentation or omission to the PTO that was (a) material; and (b) made with specific intent to deceive. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290–91 (Fed. Cir. 2011).

2.      As an initial matter, Prollenium attempts to allege that the inventor knowingly made a misrepresentation to the PTO with the intent to deceive. This, however, is based on the alleged "removal" of a prior art reference by said inventor. But there was no omission or misrepresentation. There can be no question that the allegedly "removed" reference was actually submitted to the Examiner during prosecution. This is fatal to Prollenium's theory, because "[a]n applicant cannot be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner." *Fiskars, Inc. v. Hunt Mfg. Co.*,

221 F.3d 1318, 1327 (Fed. Cir. 2000).  Similarly, although Prollenium may disagree with the applicant's arguments to distinguish the claimed inventions from the prior art, such advocacy does not constitute inequitable conduct.  *See, e.g.*, *Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, C. A. No. 17-1353-LPS, 2019 WL 668843, at *3 (D. Del. Feb. 19, 2019) ("[T]he mere fact that a patent applicant attempts to distinguish its patent from the prior art does not constitute a material omission or misrepresentation where the patent examiner has the prior art before him or her, and therefore, is free to make his or her own conclusions regarding the claimed invention."  (internal citations omitted)).

3.      Further, Prollenium's counterclaim does not allege the "who, what, when, where, and how" with sufficient particularity under Rule 9(b) and thus fails to allege materiality.  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).  A factual deficiency with respect to any of the above elements is "fatal under Rule 9(b)."  *Id*. at 1330.

4.      Prollenium does not allege what patent claims would have been affected by any alleged misrepresentation or omission.  *See Exergen*, 575 F.3d at 1329.  Prollenium also does not specifically allege (a) where the allegedly invalidating information in the "omitted and/or misrepresented material" is found, (b) why the purported misrepresentation or omission was not cumulative of information already before the PTO, or (c) how the Examiner would have used the information in assessing the patentability of the claims.  *Exergen*, 575 F.3d at 1329–30.

5.      Finally, Prollenium has not pled the specific intent necessary to sustain an inequitable conduct claim.  Prollenium is unable to show that anyone ***knowingly*** lied to the PTO. Prollenium disagrees with statements made in an inventor declaration concerning teachings in the prior art, but Prollenium provides nothing more than conclusory allegations that those statements were false, and does not even allege that the inventor ***knew*** they were supposedly

false when the declaration was made.  Instead, Prollenium attempts to suggest bad motives based on modifications that Allergan made to later patent application descriptions, even though the allegedly "removed" prior art reference—*Sadozai*—always remained a cited reference by Allergan and was submitted by the applicant to the Examiner during prosecution.

6.     As explained in *Therasense*, under the Federal Circuit's heightened standard for assertions of inequitable conduct, it is not enough to omit or misrepresent something to the PTO—one must do so with the intent to defraud.  *Therasense*, 649 F.3d at 1290.  Under Prollenium's theory, such intent simply cannot be reasonably inferred.

## IV.     STATEMENT OF FACTS

### A.     Prosecution of the Patents-in-Suit.

The ultimate parent application of the patents-in-suit, U.S. Application 12/393,884 ("the '884 Application"), was filed on February 26, 2009 and issued as the '795 Patent on January 22, 2013.  The '884 Application claims priority to Provisional Application 61/085,956 ("the '956 Provisional").

The '956 Provisional includes a discussion, among other things, of U.S. Application 10/743,557 by Sadozai et al. ("*Sadozai*").  As the '956 Provisional explained, *Sadozai* describes "a process for making an HA [hyaluronic acid]-based composition including lidocaine which includes hydrating dried HA particles with a phosphate buffer containing lidocaine."  (Ex. A at 2).  The description of *Sadozai* in the '956 Provisional application always remains a part of the "prosecution history" of the '884 Application, *see, e.g., MPHJ Tech. Investments, LLC v. Ricoh Ams. Corp.*, 847 F.3d 1363, 1369 (Fed. Cir. 2017). *Sadozai*, like certain other prior art references, was not repeated in the text submitted for the '884 Application.[1]   Prollenium

---

[1]     In patent prosecution, differences in the texts of a provisional application and nonprovisional application are common and not controversial.  *See E.I. du Pont de Nemours & Co. v.*

nevertheless ascribes nefarious intent to this alleged "removal," even though *Sadozai* was, in fact, disclosed to the PTO in the provisional application as well as in an Information Disclosure Statement ("IDS") submitted on August 4, 2009, just months after the '884 Application was filed—and more than a year before the Examiner's first office action. And on May 31, 2011, the Examiner initialed the IDS, including *Sadozai*, indicating that he has considered the reference. *See* Ex. D.

On January 12, 2012, following a series of office actions, the applicant had a telephone interview with the Examiner, during which:

> Applicant submitted proposed amendments to the claims to incorporate limitations from the specification to limit the gel composition to have particular properties. Applicant further discussed submitting an affidavit showing that the properties of the gel which were not previously appreciated resulted in the incorporation of lidocaine, where previous attempts failed. The Examiner noted that such an amendment with an affidavit would likely overcome the prior art rejection of record.

Ex. E at 2.

On March 7, 2012, the applicant submitted an unsigned draft declaration. (D.I. 11-1 at 6–8). On April 9, 2012, there was a second interview with the examiner, during which:

> Applicant discussed submitting a decleration [sic] to discuss the unexpected result of incorporating lidocaine into a hyaluronic [sic] acid gel that has been cross-linked but is not cross-linked to any other polymer. The Applicant found that incorporation into such a gel was stable and did not degrade over time as was expected by those of oridnary [sic] skill in the field. The Examiner indicated that this would be sufficient to overcome the rejection of record.

Ex. F at 2.

---

*MacDermid Printing Sols., L.L.C.*, 525 F.3d 1353, 1358 (Fed. Cir. 2008) (describing requirements for claiming priority from a nonprovisional application to a provisional application). Indeed, this was far from the only difference between the texts of the '956 Provisional and the '884 Application. *See* Exs. A (written description of the '956 Provisional); B (original written description of the '884 Application); and C (redline comparison).

6

On June 14, 2012, the applicant submitted a signed declaration from the inventor, Dr. Pierre Lebreton, dated May 2, 2012. (D.I. 11-1 at 2–4). The declaration describes numerous observations about the state of the art as understood by Dr. Lebreton, including that: (1) it was believed that adding lidocaine to HA gel compositions during manufacturing caused degradation prior to injection; (2) it was believed that lidocaine caused degradation during high temperature sterilization; (3) it was not known whether HA compositions comprising lidocaine were stable after high temperature sterilization when placed in storage for any significant length of time; (4) it was believed that the instability of HA would cause a viscosity reduction of the HA that would make it unsuitable for soft tissue filling applications; (5) a person of ordinary skill in the art would have expected that a dermal filler comprising HA and lidocaine would not have remained sufficiently stable to be useful as a soft tissue filler; and (6) it was not appreciated that a dermal filler comprising a cohesive gel of HA makes it possible for lidocaine to be combined with HA in a gel that is sufficiently stable to be useful as a soft tissue filler. *Id.* The declaration explains that these advancements were demonstrated by experiments reported in the patent application, and concludes that, to Dr. Lebreton's knowledge, "it was a surprising and unexpected discovery, not appreciated prior to the present invention, that certain cohesive HA gels, as defined in the application, when mixed with lidocaine, could be made to be heat and shelf stable." *Id.* at 4.

On August 6, 2012, the Examiner issued a notice of allowance. In the statement of reasons for allowance, the Examiner explained:

> Applicant argues that one of ordinary skill in the art would have expected degradation of the [HA] gel with addition of lidocaine during sterilization, as this was what was known in the prior art. Applicant unexpectedly found that a [HA] gel cross-linked, but not with a non-HA biopolymer, mixed with lidocaine and sterilized does not degrade.

Ex. G at 9.  The '795 patent issued on January 22, 2013.

**B.  Prollenium's Inequitable Conduct Counterclaim and Affirmative Defense.**

In Count VII of its counterclaims and its fourth affirmative defense, Prollenium accuses Allergan of inequitable conduct.  Although Prollenium has attempted to cure its previous pleading defects by filing an Amended Answer rather than respond to Allergan's motion to dismiss, Prollenium's amended theory still fails.  Similarly, its citation of additional alleged "facts" does nothing to cure the insufficiencies in the Prollenium's pleadings.

Prollenium alleges that "[m]any of the statements contained in the Inventor Declaration are demonstrably false."  (D.I. 29 at 19).  Prollenium cites examples in which the inventor stated his belief that:

- "adding lidocaine to [HA] gel compositions during manufacturing caused degradation of the [HA] prior to injection"

- "lidocaine caused degradation of HA gel composition during high temperature sterilization"

- "it was not known whether HA compositions comprising lidocaine were stable or not after high temperature sterilization when places [sic] in storage for any significant length of time"

- "it was also believed that the instability of HA described above would have caused a viscosity reduction of the HA that would make it unsuitable for soft tissue filling applications"

- "a person of ordinary skill in the art would have expected that a dermal filler comprising hyaluronic acid and lidocaine would not have remained sufficiently stable to be useful as a soft tissue filler"

- "it was not appreciated that a dermal filler comprising a cohesive gel of hyaluronic acid makes it possible for lidocaine to be combined with hyaluronic acid in a gel that is sufficiently stable to be useful as a soft tissue filler"

- "it was a surprising  and unexpected discovery, not appreciated prior to the present invention, that certain cohesive HA gels, as defined in the application, when mixed with lidocaine, could be made to be heat and shelf stable."

*Id.* (citing paragraphs 5–10 and 12 of the May 2, 2012 declaration).  Prollenium's pleading fails, however, to demonstrate that any of these statements is false.  Nowhere, in fact, does Prollenium attempt to explain how *Sadozai*, the allegedly "removed" reference, establishes that any of these statements is false.

Prollenium instead argues that "it was well-known to persons of ordinary skill in the art that crosslinked HA-lidocaine fillers performed equally as well, if not better than crosslinked HA dermal fillers not containing lidocaine."  *Id.*  In an apparent attempt to support that contention, Prollenium notes that the '956 Provisional included a discussion of *Sadozai* that allegedly "disclosed adding lidocaine to crosslinked HA dermal fillers."  *Id.*  Prollenium asserts that the '956 Provisional discloses that "adding lidocaine to crosslinked HA dermal fillers performed equally as well as crosslinked HA dermal fillers without lidocaine" and that the discussion was removed from the '884 Application "[b]y the time the Inventor Declaration was submitted to the PTO."  *Id.*

Prollenium ultimately concludes that the "removal of what was known in the prior art [from the '884 Application] demonstrates not only that the statements by Lebreton were false, but that Lebreton knew the information was contrary and that the misrepresentations in the declaration and related assertions by the Applicant were made with the intent to deceive the PTO."  *Id.*  As discussed above, however, Allergan submitted the *Sadozai* reference to the PTO shortly after the '884 Application was filed and long before the first office action issued—and even longer before the Lebreton declaration was submitted.

Prollenium's counterclaim is most notable for what it does not allege.  After first failing in its originally filed counterclaim to adequately identify any person that allegedly withheld or misrepresented material information and after receiving Allergan's motion to dismiss,

9

Prollenium now attempts to identify an individual who allegedly misrepresented material information.  Critically, even in its discussion of the inventor's declaration, however, Prollenium does not allege that the inventor **knew** anything he represented was allegedly false.  The best Prollenium can say is that the declaration is false based on events that occurred years prior and which Prollenium does not even allege the inventor engaged in personally.  Therefore, Prollenium advances no allegation of intent as is required to support an allegation of inequitable conduct.

Second, Prollenium makes a conclusory attempt to plead "materiality," another necessary requirement for an inequitable conduct allegation.  But on this, Prollenium simply asserts—without more—that the subject information is material—but this, of course, does not satisfy the heightened pleading standard.  Although Prollenium attempts to contradict certain statements in Dr. Lebreton's declaration, such arguments clearly fall short as *Sadozai* discusses hydrating dried, crosslinked HA particles with a buffer containing lidocaine, whereas the declaration discusses the addition of lidocaine to an HA gel containing *both* crosslinked and un-crosslinked HA.

Critically, Prollenium does not identify any patent claim that allegedly would have not have issued had *Sadozai* been specifically discussed in the text of the '884 Application.  Indeed, this is not surprising, as *Sadozai* had already been discussed in the '956 Provisional, from which the '884 Application claimed priority, and was again disclosed to the PTO in an IDS during prosecution of the'884 Application and which the Examiner initialed as being considered.

Lastly, *even if* Prollenium continues to argue falsely that *Sadozai* was not disclosed to the PTO, and *even if* Prollenium could further show the inventor's declaration to be false—which it cannot—Prollenium fails to allege that *Sadozai* is not cumulative of all the other references that

10

(also) were before the examiner.  Accordingly, on all levels, Prollenium's inequitable conduct allegation is insufficiently pled.

## V.   LEGAL STANDARD OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(6).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may assert as a defense the "failure to state a claim upon which relief can be granted," before serving a responsive pleading. Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim for inequitable conduct must satisfy the ***heightened pleading*** standard of Rule 9(b).  *Exergen*, 575 F.3d at 1326.  It "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *Id.* at 1328–29.

The predicate omission or misrepresentation prong must be satisfied by allegations that "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Id.* at 1328.  "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)."  *Id.* at 1326–27.  To satisfy the "who" and "when," the pleading must name the person who knew of the material information and deliberately withheld or misrepresented it, and indicate when the conduct took place.  *Id.* at 1329, 1331.  The "what" and "where" require identification of "which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is

11

found." *Id*. at 1329. The "why" must allege that the withheld information was material and not cumulative, and the "how" an examiner would have used the information in assessing patentability. *Id*. at 1329–30. A factual deficiency with respect to any of the above elements is "fatal under Rule 9(b)." *Id*. at 1330.

The second prong requires that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO. *Therasense,* 649 F.3d at 1290–91. "Intent and materiality are separate requirements." *Id*. at 1290. As a general matter, "the materiality required to establish inequitable conduct is but-for materiality." *Id.* at 1291. Indeed, the Federal Circuit "tighten[ed] the standards for finding ***both*** intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id*. at 1290 (emphasis added).

### B.     Federal Rule of Civil Procedure 12(f).

Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Just as a claim for inequitable conduct must meet the heightened pleading requirements of Rule 9(b), a defendant is also required to plead this affirmative defense with particularity under Rule 9(b). As a result, [] counterclaim[s] and affirmative defense[s] for inequitable conduct rise or fall together." *Senju Pharmaceutical Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013) (internal citations and quotations omitted).

## VI.    ARGUMENT

### A.     Prollenium's Inequitable Conduct Counterclaim Should Be Dismissed.

Prollenium's inequitable conduct allegations are insufficient. They fail as a matter of law because they do not satisfy the "who, what, when, where, and how" particularity standard of Rule 9(b). *See Exergen*, 575 F.3d at 1328.

1.      **Prollenium Does Not Allege An Omission or Misrepresentation.**

Prollenium's theory appears to be that Dr. Lebreton submitted an allegedly misleading declaration, and that statements from the declaration are false, given a "removed" prior art reference that allegedly teaches about the stability of formulations that include lidocaine.  But Prollenium's theory is entirely unsupported.

At the outset, nothing was ever withheld or "removed."  Allergan submitted an IDS identifying *Sadozai* on August 4, 2009.  Ex. H at 2.  "An applicant cannot be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner."  *Fiskars*, 221 F.3d at 1327.  Moreover, "[t]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct."  *Exergen*, 575 F.3d at 1331.  Thus, Allergan "removing" *Sadozai* from the text of the '884 Application cannot, as a matter of law, be inequitable conduct.  *Id*.; *see also ESCO Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051, 1065 (D. Nev. 2016) (finding no deceptive intent where patentee included certain prior art in earlier applications but not in later divisional applications).  This alone requires dismissal of Prollenium's inequitable conduct counterclaim and affirmative defense.

Further, although Prollenium may disagree as to what the prior art teaches about lidocaine, that does not rise to the level of inequitable conduct.  "[T]he mere fact that a patent applicant attempts to distinguish its patent from the prior art does not constitute a material omission or misrepresentation where the patent examiner has the prior art before him or her, and therefore, is free to make his or her own conclusions regarding the claimed invention."  *Pac. Biosciences*, 2019 WL 668843 at *3 (internal citations omitted).  The examiner here unquestionably had the *Sadozai* reference before him during prosecution. And just as in

13

*Pac. Biosciences*, Allergan's and the inventor's attempt to distinguish the invention from the prior art is not a material omission or misrepresentation to the PTO. *Id*.; *see also LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 379, 386 (D. Del. 2000) (finding that "even if Plaintiff's characterization of the . . . patents was inaccurate, . . . this characterization would not rise to the level of a material misrepresentation").

Therefore, Prollenium has failed to allege either an omission or a misrepresentation to the PTO, and its counterclaim should be dismissed.

### 2. Prollenium Fails to Identify Where and What Information Was Supposedly Misrepresented and/or Omitted from the PTO.

To plead the "what" of the material omissions and/or misrepresentations, the pleading must identify "which claims, and which limitations in those claims, the withheld references are relevant to." *Exergen*, 575 F.3d at 1329. To meet the "where" requirement, the party alleging inequitable conduct must identify "where in those references the material information is found." *Id.*

Here, Prollenium alleges that the Inventor Declaration contained "demonstrably false" statements allegedly evidenced by the "removal" of *Sadozai* from the non-provisional application. (D.I. 29 at Counterclaim ¶¶ 28–29). Yet Prollenium fails to identify any specific claims of the '795 patent affected by this alleged misrepresentation.

Instead, Prollenium makes a general reference to all of the pending claims and contends that "but for the statements made in the Declaration by Lebreton, the Examiner would not have allowed." (D.I. 29 Counterclaim ¶ 26). This is simply not enough to meet the high standard of pleading inequitable conduct. *See Exergen*, 575 F.3d at 1329–30 (allegations must identify specific claim language or claim numbers to establish the materiality).

14

Further, Prollenium's counterclaim fails to adequately identify "where" the allegedly invalidating information in the "omitted and/or misrepresented material" is found.  Instead, Prollenium generally describes its understanding of the content of *Sadozai*, with no citations to the reference itself, and notes that Allergan had in fact put the PTO on notice of this reference by citing to it in its provisional application.  (D.I. 11 at Counterclaim ¶17).  Nowhere does Prollenium explain where *Sadozai* contradicts specific statements from the inventor's declaration.  Indeed, nowhere does Prollenium show how any statement in the inventor's declaration was demonstrably false.  This failure alone is grounds to dismiss Prollenium's counterclaim.  *See Exergen*, 575 F.3d at 1329–30.

### 3. Prollenium Fails to Identify How Information was Misrepresented To and/or Omitted from the PTO Would Have Been Material.

In order to meet the "how" requirement, the pleading must describe how "an examiner would have used this information in assessing the patentability of the claims."  *Exergen*, 575 F.3d at 1330.  To do so, the pleading must sufficiently articulate how "the omitted information is not cumulative of the information already on the record[,] by identifying the particular claim limitations that are absent from the record."  *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.,* C. A. No. 12-441-RGA, 2014 WL 2622240, at *1 (D. Del. June 11, 2014).

Prollenium must identify "particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record" to explain why the information is material and not cumulative and how the examiner would have used the information in assessing patentability. *Exergen*, 575 F.3d at 1329–30.  Prollenium does no such thing.  (D.I. 29 at Counterclaim ¶¶ 1–32, 69–79).  Merely referring to content contained in a piece of prior art that was disclosed to the Examiner, "does not satisfy Rule 9(b) without

references to particular claim limitations." *ESCO Corp.*, 158 F. Supp. 3d at 1064; *see also Exergen*, 575 F.3d 1329.

Prollenium also fails to identify why this reference is "not cumulative to the information already of record." Nowhere does Prollenium's counterclaim even suggest that *Sadozai* is "not cumulative to the information already of record." Indeed, Prollenium does not mention *Wang*, *Calias*, or the *Lebreton* references—*i.e.*, the references actually relied on by the Examiner in office actions during prosecution, which the applicant successfully overcame—nor does it explain how *Sadozai* provides something different from these references. (D.I. 29 at Counterclaim ¶¶ 1–29, 69–79).

### 4.    Prollenium Fails to Plead Specific Intent.

Not only does Prollenium not adequately plead sufficient facts to establish any misrepresentation or omission, but it only makes a conclusory allegation of ***knowingly*** acting with specific intent to deceive the PTO. Courts routinely dismiss inequitable conduct counterclaims where the pleadings fail to identify specific facts "from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and **withheld that information with a specific intent to deceive the PTO**." *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 379 (D. Del. 2012) (internal citations and quotations omitted) (emphasis added); *see also Exergen*, 575 F.3d at 1338–29; *Senju*, 921 F. Supp. 2d at 306–07. Prollenium makes no such showing here.

Simply asserting that the inventor knowingly acted with specific intent does not satisfy the heightened pleading standard. Prollenium has failed to sufficiently allege that the inventor knowingly acted with the specific intent to deceive the PTO. Nor could Prollenium do so—the reference and information allegedly withheld from the Examiner were, in fact, submitted during prosecution, which is wholly inconsistent with an alleged theory to defraud the PTO.

16

Further, Prollenium makes no allegations that Dr. Lebreton "removed" the *Sadozai* reference or had considered its disclosure when drafting or signing his declaration.  Prollenium also fails to make factual allegations from which the Court could infer that the inventor intended to deceive the PTO.  Again, Prollenium simply asserts that there was the intent to deceive but does not point to any evidence to support this allegation.

In short, Prollenium's threadbare allegations, which already fail to identify the "what, when, where, and how," must also fall because they do not contend that anyone ***knowingly*** omitted or misrepresented anything, let alone with a specific intent to deceive the PTO. Prollenium's inequitable conduct counterclaim fails as a matter of law.

### B.    Prollenium's Inequitable Conduct Affirmative Defense Should Also Be Stricken.

Federal Rule of Civil Procedure 12(f) allows a district court to "strike from a pleading any insufficient defense."  Fed. R. Civ. P. 12(f).  Courts in this Circuit use Rule 12(f) to "strike affirmative defenses where a party has failed to state a corresponding claim upon which relief can be granted."  *Wyeth Holdings Corp. v. Sandoz, Inc.*, C. A. No. 09-955-LPS-CJB, 2012 WL 600715, at *4 (D. Del. Feb. 3, 2012), report and recommendation adopted, 2012 WL 749378 (D. Del. Mar. 1, 2012); *see also XpertUniverse*, 868 F. Supp. 2d at 379–84 (assessing the sufficiency of counterclaims and affirmative defenses of inequitable conduct together).  "As a result, [] counterclaim[s] and affirmative defense[s] for inequitable conduct rise or fall together." *Senju*, 921 F. Supp. 2d at 306 (internal citations and quotations omitted).

As discussed above, Prollenium's inequitable conduct counterclaim is insufficient as a matter of law.  For the same reasons, Prollenium's affirmative defense of inequitable conduct should be stricken.

## VII.    CONCLUSION

Allergan respectfully requests that this Court grant its motion and: (1) dismiss Prollenium's inequitable conduct counterclaim; and (2) strike Prollenium's inequitable conduct affirmative defense.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

OF COUNSEL:

Gary E. Hood
Mark T. Deming
Randal S. Alexander
Enes Ovcina
POLSINELLI PC
150 North Riverside Plaza, Suite 3000
Chicago, IL  60601
(312) 819-1900

August 12, 2019

*Attorneys for Plaintiffs*

18

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 12, 2019, upon the following in the manner indicated:

John G. Day, Esquire                                              *VIA ELECTRONIC MAIL*
Andrew C. Mayo, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
*Attorneys for Defendants*

John W. Harbin, Esquire                                          *VIA ELECTRONIC MAIL*
Gregory J. Carlin, Esquire
Warren Thomas, Esquire
Robert J. Leonard, Esquire
MEUNIER CARLIN & CURFMAN LLP
999 Peachtree Street NE, Suite 1300
Atlanta, GA  30309
*Attorneys for Defendants*


                                    */s/ Jack B. Blumenfeld*

                                    _____
                                    Jack B. Blumenfeld (#1014)