IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN USA, INC. and ALLERGAN INDUSTRIE SAS, ) ) ) Plaintiffs, ) ) v. ) ) PROLLENIUM US INC. and PROLLENIUM ) MEDICAL TECHNOLOGIES INC., ) ) Defendants. ) | C.A. No. 19-126 (CFC) (SRF) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
COUNT VII OF DEFENDANTS' COUNTERCLAIM AND
<u>STRIKE DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE</u>**

OF COUNSEL:

Gary E. Hood
Mark T. Deming
Randal S. Alexander
Enes Ovcina
POLSINELLI PC
150 North Riverside Plaza, Suite 3000
Chicago, IL 60601
(312) 819-1900

September 23, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Plaintiffs*

TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................2

    A. Prollenium's Inequitable Conduct Counterclaim Should Be Dismissed. ................2

        1. Allergan Applied the Correct Legal Standard. ............................................2

        2. Prollenium Has Not Pointed to Any Misrepresentations in the Lebreton Declaration. ................................................................................3

        3. Prollenium Has Not Identified Where and What Information Was Supposedly Misrepresented and/or Omitted. ...............................................6

            (1) Prollenium Failed to Identify the "What." .......................................6

            (2) Nor has Prollenium Identified "Where" There Was a Misrepresentation. ............................................................................7

        4. Prollenium Also Failed the "How"—Its Allegations Do Not Establish But-For Materiality. .....................................................................7

        5. Prollenium's Allegations Do Not Support a Reasonable Inference of Specific Intent to Deceive the PTO. .......................................................8

    B. Prollenium's Request to Amend Should be Denied. .............................................10

    C. Prollenium's Inequitable Conduct Affirmative Defense Should Also Be Stricken. .................................................................................................................10

III. CONCLUSION ............................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barkes v. First Corr. Med.*,
  No. 06-104-JJF-MPT, 2010 WL 1418347 (D. Del. Apr. 7, 2010) ..........................10

*Courtesy Products L.L.C. v. Hamilton Beach Brands, Inc.*,
  No. 13-2012-SLR-SRF, 2015 WL 6159113 (D. Del. Oct. 2015) .............................5

*ESCO Corp. v. Cashman Equip. Co.*,
  158 F. Supp. 3d 1051 (D. Nev. 2016) ......................................................................8

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
  417 F. Supp. 2d 580 (D. Del. 2006) .........................................................................6

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) ...................................................................2, 6, 7, 8

*Fiskars, Inc. v. Hunt Mfg. Co.*,
  221 F.3d 1318 (Fed. Cir. 2000) ................................................................................5

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  No. 18-452-WCB, 2019 WL 2121395 (D. Del. May 15, 2019) ...............................2

*Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*,
  No. 17-1353-LPS, 2019 WL 668843 (D. Del. Feb. 19, 2019) .................................3

*Senju Pharmaceutical Co. v. Apotex, Inc.*,
  921 F. Supp. 2d 297 (D. Del. 2013) .......................................................................10

*Southco, Inc. v. Penn Eng'g & Mfg. Corp.*,
  768 F. Supp. 2d 715 (D. Del. 2011) .........................................................................2

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
  No. 12-441-RGA, 2014 WL 2622240 (D. Del. June 11, 2014) ...............................8

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir.
  2011) ........................................................................................................................9

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
  No. 09-955-LPS-CJB, 2012 WL 600715 (D. Del. Feb. 3, 2012) .............................5

## I. INTRODUCTION

In its opposition brief (D.I. 40), Prollenium concedes that its inequitable conduct counterclaim and defense cannot survive based on its original theory that Allergan allegedly withheld material from the PTO. It is, therefore, undisputed that Allergan did not withhold material from the PTO. Nevertheless, Prollenium now advances a different angle of attack, asserting that its theory "centers on" an allegedly "false declaration submitted to the PTO by inventor Pierre Lebreton." D.I. 40 at 1. Prollenium's revised inequitable conduct theory fares no better than its original theory did. Critically, Prollenium fails to identify anything in its amended pleadings—other than mere attorney argument—that could support these alleged conclusions. At best, Prollenium's argument is that it disagrees with Lebreton's understanding of the prior art. That, however, is not legally sufficient to support an inequitable conduct claim.

Further, under no circumstances could Prollenium's flawed theory rise to the level of "but-for materiality"—the allegedly "removed" reference was actually before the PTO, and any differences in the understanding of the prior art were therefore available to the PTO. Finally, Prollenium fails to plead any facts from which a factfinder could reasonably infer that any individual made a *knowingly* false statement or material omission during the prosecution of the patents-in-suit. Prollenium makes no attempt to overcome this pleading failure.

Each one of Prollenium's many failures to adequately plead inequitable conduct would independently support the dismissal of Prollenium's claims. Taken together, Prollenium's comprehensive failures to adequately plead confirm that another round of amendments would not cure Prollenium's doomed defenses, and is therefore futile.

## II. ARGUMENT

### A. Prollenium's Inequitable Conduct Counterclaim Should Be Dismissed.

#### 1. Allergan Applied the Correct Legal Standard.

Allergan's opening brief applied the correct legal standard—whether Prollenium's counterclaims contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. And under this standard, Prollenium's inequitable conduct counterclaim and affirmative defense do not contain such factual matter.

A claim for inequitable conduct must satisfy the heightened pleading standard of Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). As such, "a court is not required to accept affirmative defenses that are mere barebones conclusory allegations, and may strike such inadequately pleaded defenses." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 2121395, at *2 (D. Del. May 15, 2019) (internal citations omitted). Nor is the Court obligated to accept as true "bald assertions," "unsupported conclusions and unwarranted inferences," or allegations that are "self-evidently false." *Southco, Inc. v. Penn Eng'g & Mfg. Corp.*, 768 F. Supp. 2d 715, 720 (D. Del. 2011).

Under this heightened standard, Prollenium's pleadings fail. Despite a second effort following Allergan's first motion to dismiss, Prollenium failed to add facts to support its allegations, leaving only its unsupported conclusions. Although Prollenium's counterclaim now contains additional paragraphs, the substance of the allegations is unchanged and still fails to support what are otherwise bald assertions. Prollenium has twice failed to plead a sufficient inequitable conduct counterclaim and affirmative defense. They should be dismissed.

>        **2.   Prollenium Has Not Pointed to Any Misrepresentations in the Lebreton Declaration.**

Although Prollenium may disagree as to what the prior art teaches about lidocaine, that does not rise to the level of inequitable conduct. "[T]he mere fact that a patent applicant attempts to distinguish its patent from the prior art does not constitute a material omission or misrepresentation where the patent examiner has the prior art before him or her, and therefore, is free to make his or her own conclusions regarding the claimed invention." *Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, No. 17-1353-LPS, 2019 WL 668843, at *3 (D. Del. Feb. 19, 2019) (internal citations omitted). The examiner here unquestionably had *Sadozai* before him during prosecution. Allergan's and the inventor's attempt to distinguish the invention from the prior art is not a material omission or misrepresentation to the PTO. *Id.*

Prollenium contends that its counterclaims "are premised on the misrepresentations made in Lebreton's declaration to the PTO about the state of the prior art at the time of the invention and the claimed unexpected results, and that a person of ordinary skill in the art would recognize many of the statements in the declaration to be false." D.I. 40 at 11. Prollenium further argues that Lebreton knew that the prior art disclosed HA-based compositions including lidocaine due, in part, to the removal of the *Sadozai* publication from the specification and a description thereof. *Id.* at 11-12. But even Prollenium acknowledges that these allegations are insufficient to support an inequitable conduct claim, admitting that it cites this only as additional "indicia of knowledge and ill intent on the part of Lebreton (and Allergan)." *Id.*

Prollenium does not support its assertion that Lebreton's declaration included any material misrepresentation with anything but conclusory attorney argument. Prollenium even admits that affirmative statements in Lebreton's declaration showed that "at the time of the invention it was believed that the addition of lidocaine to crosslinked HA compositions would

3

not be beneficial because it would cause the HA to degrade prior to injection and that it was not known whether such a combination was stable after high temperature stabilization." *Id.* at 5.

All Prollenium relies on for its position is provisional application No. 61/085,956 ("'956 application"), D.I. 29, Counterclaim ¶ 31, which Prollenium argues contradicts the Lebreton Declaration. But that application does no such thing. Instead, the '956 application identifies *Sadozai* as one of several references, and states that *Sadozai* "discloses a process for making an HA-based composition including lidocaine which includes hydrating HA particles with a phosphate buffer containing lidocaine." D.I. 35-1, Ex. A, at 2. The '956 application goes on to explain that "conventional knowledge in the art . . . has recognized that the addition of lidocaine HCl to crosslinked HA-based gels causes degradation, for example, complete degradation, of the crosslinked HA gel, including loss of viscosity and possibly loss of stability *in vivo*." *Id*. at 4. The '956 application states:

> It is believed by the inventor of the present invention that such degradation may primarily occur because many, perhaps most crosslinked HA based gels are conventionally manufactured in a manner that produces gels which are "biphasic" in nature, and are not sufficiently cohesive to prevent such degradation when lidocaine HCl is added. It has now been discovered that the addition of lidocaine HCl to sufficiently cohesive crosslinked HA-based compositions does not cause any substantial or significant degradation of the compositions, and the compositions maintain their integrity, in terms of rheology, viscosity, appearance and other characteristics even when stored for a lengthy period of time and even when subjected to heat and pressure sterilization, for example, autoclaving.

*Id*. This is entirely consistent with the Lebreton Declaration.

Indeed, Prollenium ignores entire portions of the Lebreton Declaration that show the consistency with the '956 provisional application, and undercut any conclusion that a material misrepresentation existed. For example, the Lebreton Declaration states:

- The enhanced stability properties of the inventive dermal fillers was evidenced by certain experiments performed under my direction by my research team prior to the application filing date. (D.I. 26-1, Ex B., at ¶ 11).

4

- • The experiments are generally set forth in the patent application in the Examples and Drawings. (D.I. 26-1, Ex B., at ¶ 12).

- • The experiments showed that certain HA gels, when mixed with lidocaine, degraded and became substantially less viscous after high temperature sterilization, specifically autoclave sterilization, as would have been expected by one of ordinary skill in the art. This is shown in Figures 1-3 of the application. Samples 1, 2 and 3 exhibited a decrease in viscosity of approximately 60%, 73% and 35%, respectively. (D.I. 26-1, Ex B., at ¶ 13).

It is apparent from these statements, and the material cited in the application, that Lebreton believed (based on experiments he had conducted) his statements were true. Prollenium fails to consider these facts and the inference that can be drawn from them.

Nor does the supposed "removal" of discussion of *Sadozai* from the text of the '956 application demonstrate anything. Far from withholding *Sadozai*, there is no dispute that Allergan submitted an IDS identifying *Sadozai*. D.I. 35-1, Ex. H at 2. "[A]n applicant cannot be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner." *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000).

Prollenium's citations to case law do not save its insufficient pleadings. In *Courtesy Products L.L.C. v. Hamilton Beach Brands, Inc.*, No. 13-2012-SLR-SRF, 2015 WL 6159113, at *5 (D. Del. Oct. 2015), the inequitable conduct counterclaim was based on allegations that "set forth allegedly contradictory factual statements made in the prosecution history and submitted declarations." Here, by contrast, the Lebreton Declaration and the '956 provisional, on which Prollenium's allegations rely, show consistency and the absence of any misrepresentations.

Similarly, in *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09-955-LPS-CJB, 2012 WL 600715, at *10-11 (D. Del. Feb. 3, 2012), the counterclaim plaintiff alleged that the patentee withheld data from the examiner, including "the error rate associated with the data, alternative explanations for the data, and inconsistencies in the data that draw in to question its reliability."

5

Here, Prollenium did not (and cannot) hang its counterclaim on allegations that Lebreton withheld data from the examiner.

Simply put, Prollenium's allegations do not support Prollenium's contention that inventor Lebreton made any material misrepresentations to the Examiner.

### 3. Prollenium Has Not Identified Where and What Information Was Supposedly Misrepresented and/or Omitted.

#### (1) Prollenium Failed to Identify the "What."

To meet the "what" of the material omissions and/or misrepresentations, the pleading must identify "which claims, and which limitations in those claims, the withheld references are relevant to." *Exergen*, 575 F.3d at 1329. Here, Prollenium alleged that the Lebreton Declaration contained "demonstrably false" statements allegedly evidenced, as among other things, by the "removal" of *Sadozai* from the non-provisional application. D.I. 29 at Counterclaim ¶¶ 28–29. Yet Prollenium failed to identify any specific claims of the '795 patent (or the other patents-in-suit) affected by this alleged misrepresentation.

Instead, Prollenium makes a general reference to all of the pending claims and contends with no support that "but for the statements made in the Declaration by Lebreton, the Examiner would not have allowed." D.I. 29 at Counterclaim ¶ 26. This is simply not enough to meet the high standard of pleading inequitable conduct. *See Exergen*, 575 F.3d at 1329–30 (allegations must identify specific claim language or claim numbers to establish the materiality). Moreover, Prollenium failed to plead how the claims of the '795 patent are related to the claims of the other asserted patents other than a generalization that "the accused patents are likewise infected by Plaintiff's inequitable conduct because they all require a crosslinked HA composition and the addition of lidocaine." D.I. 40, at 19. More is required to adequately plead inequitable conduct. *See eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 595 (D. Del. 2006).

6

### (2) Nor has Prollenium Identified "Where" There Was a Misrepresentation.

To meet the "where" requirement, the party alleging inequitable conduct must identify "where in those references the material information is found." *Exergen,* 575 F.3d at 1329. Prollenium's counterclaim fails to adequately identify "where" the allegedly invalidating information in the "omitted and/or misrepresented material" is found. Although Prollenium contends that the misrepresentation in the Lebreton Declaration was his statement that "at the time of the invention it was believed that the addition of lidocaine to crosslinked HA compositions would not be beneficial because it would cause the HA to degrade prior to injection and that it was not known whether such a combination was stable after high temperature stabilization," the only support Prollenium offers to argues that this was a misrepresentation is "'it was well-known to persons of ordinary skill in the art that crosslinked HA-lidocaine fillers performed equally as well as, if not better than, crosslinked HA-dermal fillers not containing lidocaine." D.I. 29 at Counterclaim ¶30. This is unsupported attorney argument. At most, this allegation is a disagreement about what was taught in the prior art, which is insufficient.

All Prollenium does is generally describe its understanding of the content of *Sadozai*, with no citations to the reference itself. D.I. 29 at Counterclaim ¶ 31. Nowhere does Prollenium explain where *Sadozai* contradicts specific statements from the Lebreton Declaration. Nowhere does Prollenium show how any statement in the Lebreton Declaration was false. This failure alone is grounds to dismiss Prollenium's counterclaim. See *Exergen*, 575 F.3d at 1329–30.

### 4. Prollenium Also Failed the "How"—Its Allegations Do Not Establish But-For Materiality.

In order to meet the "how" requirement, the pleading must describe how "an examiner would have used this information in assessing the patentability of the claims." *Exergen,* 575

7

F.3d at 1330. To do so, the pleading must sufficiently articulate how "the omitted information is not cumulative of the information already on the record[,] by identifying the particular claim limitations that are absent from the record." *St. Jude Med. v. Volcano Corp.,* No. 12-441-RGA, 2014 WL 2622240, at *1 (D. Del. June 11, 2014) (citations omitted).

Prollenium had to identify "particular claim limitations, or a combination of claim limitations, that are supposedly absent from the information of record" to explain why the information was material and not cumulative and how the examiner would have used the information in assessing patentability. *Exergen*, 575 F.3d at 1329–30. Prollenium failed to do so. D.I. 29 at Counterclaim ¶¶ 1–32, 69–79. Merely referring to content contained in a piece of prior art that was disclosed to the Examiner "does not satisfy Rule 9(b) without references to particular claim limitations." *ESCO Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051, 1064 (D. Nev. 2016); *see also Exergen*, 575 F.3d at 1329.

Prollenium also failed to explain why this reference was "not cumulative to the information already of record." Nowhere did Prollenium's counterclaim even suggest that *Sadozai* was "not cumulative to the information already of record." Indeed, Prollenium did not mention *Wang*, *Calias*, or the *Lebreton* references—*i.e.*, the references actually relied on by the Examiner in office actions during prosecution, which the applicant successfully overcame—nor did it explain how *Sadozai* provides something different from these references. D.I. 29 at Counterclaim ¶¶ 1–32, 69–79.

### 5. Prollenium's Allegations Do Not Support a Reasonable Inference of Specific Intent to Deceive the PTO.

Not only does Prollenium not adequately plead sufficient facts to establish any misrepresentation or omission, but it makes only a conclusory allegation of ***knowingly*** acting with specific intent to deceive the PTO. To meet the clear and convincing evidence standard, the

8

specific intent to deceive must "**be the single most reasonable inference able to be drawn from the evidence**." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (emphasis added). Here, Prollenium's allegation of intent to deceive is not the single most reasonable inference. Prollenium asks the Court to ignore portions of the Lebreton Declaration for which the reasonable inference is that Lebreton believed his declaration to be true and did not submit his declaration with any intent to deceive the PTO.

In short, Prollenium's threadbare allegations, which already fail to identify the "what, when, where, and how," must also fall because they do not contend that anyone ***knowingly*** misrepresented anything, let alone with a specific intent to deceive the PTO.

Prollenium suggested that Lebreton knew the declaration was false and made those statements with the intent to deceive. To support this inference, Prollenium points to portions of the prosecution history—namely the provisional application and discussion of *Sadozai*. These allegations do not show that the declaration was false or at odds with the provisional statements. The statements in the provisional were already before the examiner. "Removal" of the *Sadozai* discussion in the non-provisional application does not support an inference of specific intent, particularly in view of the fact that the inventor disclosed *Sadozai* in an IDS.

Prollenium also fails to account for the fact that other statements in the Lebreton Declaration provided support for his statements. As discussed above, the Lebreton Declaration stated that based on experiments disclosed in the '884 application, "certain HA gels, when mixed with lidocaine, degraded and became substantially less viscous after high temperature sterilization, specifically autoclave sterilization, as would have been expected by one of ordinary skill in the art." The Lebreton Declaration cited to the '884 application that discloses HA gels mixed with lidocaine which were shown to be less viscous after sterilization.

9

### B. Prollenium's Request to Amend Should be Denied.

Prollenium requests leave to amend further if the Court finds any allegations insufficiently pled. Third Circuit cases are clear that leave to amend should be refused "only on the grounds of bad faith, undue delay, prejudice, or futility," with 'futility' meaning that the "complaint, as amended, would fail to state a claim upon which relief could be granted." *Barkes v. First Corr. Med.*, No. 06-104-JJF-MPT, 2010 WL 1418347, *6 (D. Del. Apr. 7, 2010). Here, amendment would be futile. Prollenium fails to identify how it proposes to amend its pleadings. Furthermore, Prollenium has already unsuccessfully amended its pleadings in an attempt to provide more specificity. Giving Prollenium yet another chance to amend would be futile as they will be unable to sufficiently plead inequitable conduct, as the facts, however pled, would not support a claim of inequitable conduct.

### C. Prollenium's Inequitable Conduct Affirmative Defense Should Also Be Stricken.

As the parties have recognized, "counterclaim[s] and affirmative defense[s] for inequitable conduct rise or fall together." *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013) (internal citations and quotations omitted). As discussed above, Prollenium's inequitable conduct counterclaim is insufficient as a matter of law. And for the same reasons, Prollenium's affirmative defense of inequitable conduct should be stricken.

### III. CONCLUSION

Allergan respectfully requests that this Court: (1) dismiss Prollenium's inequitable conduct counterclaim; (2) strike Prollenium's inequitable conduct affirmative defense; and (3) deny Prollenium leave to amend its deficient pleading of inequitable conduct.

|  |  |
|---|---|
| | Morris, Nichols, Arsht & Tunnell LLP |
| | */s/ Jack B. Blumenfeld* |
| | ———————————————— |
| | Jack B. Blumenfeld (#1014) |
| | Jeremy A. Tigan (#5239) |
| | 1201 North Market Street |
| | P.O. Box 1347 |
| OF COUNSEL: | Wilmington, DE  19899 |
| | (302) 658-9200 |
| Gary E. Hood | jblumenfeld@mnat.com |
| Mark T. Deming | jtigan@mnat.com |
| Randal S. Alexander | |
| Enes Ovcina | *Attorneys for Plaintiffs* |
| Polsinelli PC | |
| 150 North Riverside Plaza, Suite 3000 | |
| Chicago, IL  60601 | |
| (312) 819-1900 | |

September 23, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 23, 2019, upon the following in the manner indicated:

| | |
|---|---|
| John G. Day, Esquire<br>Andrew C. Mayo, Esquire<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |
| John W. Harbin, Esquire<br>Gregory J. Carlin, Esquire<br>Warren Thomas, Esquire<br>Robert J. Leonard, Esquire<br>MEUNIER CARLIN & CURFMAN LLP<br>999 Peachtree Street NE, Suite 1300<br>Atlanta, GA  30309<br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)