IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN USA, INC. and ALLERGAN INDUSTRIE SAS, <br><br> Plaintiffs, <br><br> v. <br><br> PROLLENIUM US INC. and PROLLENIUM MEDICAL TECHNOLOGIES INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) C.A. No. 19-126-CFC ) ) ) ) ) ) ) ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIM**

*Of Counsel:*

John W. Harbin
Gregory J. Carlin
Warren Thomas
Robert J. Leonard
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, GA 30309
(404) 645-7700

Dated: February 14, 2020

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*

{01537291;v1 }

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT .........................................................................................................3

    A. Prollenium Adequately Pled that Lebreton Made Material Misrepresentations................................................................................. 3

        1. The SACC specifically addresses Lebreton's misrepresentations regarding high-temperature sterilization.....................................4

        2. Prollenium's inequitable conduct counterclaim is not just an invalidity defense .................................................................6

        3. Prollenium does not mischaracterize Lebreton's declaration.....7

        4. Allergan's arguments about its internal documents ignore Prollenium's allegations that they confirm what was known to a POSITA at the time...................................................................8

    B. Prollenium Sufficiently Pleads Lebreton's Knowledge and His Specific Intent to Deceive the PTO..................................................... 9

III. CONCLUSION...................................................................................................11

## TABLE OF AUTHORITIES

CASES                                                                                                                    Page(s)

*Allergan USA, Inc., et al. v. Medicis Aesthetics, Inc., et al.*,
    No. 8:13-cv-01436-AG-JPR , at D.I. 81 (C.D. Cal. Aug. 12, 2014) ......... 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 5

*Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*,
    No. 13-2012-SLR-SRF, 2015 U.S. Dist. LEXIS 142257
    (D. Del. Oct. 20, 2015) .......................................................................... 5, 7

*Exergen Corp. v. Wal-Mart Stores*,
    575 F.3d 1312 (Fed. Cir. 2009) ................................................................... 9

*Umland v. Planco Fin. Servs., Inc.*,
    542 F.3d 59 (3d Cir. 2008) ......................................................................... 5

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
    C.A. No. 09-955-LPS-CJB, 2012 WL 600715 (D. Del. Feb. 3, 2012) .... 9

*Zadro Prods. v. SDI Techs., Inc.*,
    No. 17-1406 (WCB), 2019 WL 1100470 (D. Del. Mar. 8, 2019) ............. 9

## I. INTRODUCTION

The Defendants' (Prollenium's) proposed Second Amended Answer and Counterclaim ("SACC")[1] provides substantial and detailed factual allegations to amply support a reasonable inference that inventor Pierre Lebreton committed inequitable conduct. Lebreton made material misrepresentations regarding the state of, and the knowledge of persons of ordinary skill ("POSITA") about, the art, then used those misrepresentations to support a false claim of "unexpected results." Most germane to this motion, the SACC specifically addresses the concerns previously raised by the Court and provides (i) detailed evidence as to how the prior art shows Lebreton's declaration statements were false and (ii) detailed allegations citing specific evidence to support the inference that Lebreton *knew* these statements were false, both because of his status as a POSITA as well as internal Allergan documents showing that Lebreton *personally knew* about much of the relevant prior art. Finally, the allegations sufficiently show Lebreton made these statements—specifically aimed at overcoming the examiner's obviousness rejections—with the intent to deceive the Patent Office.

Allergan's opposition mostly ignores the detailed factual support provided in the SACC and obfuscates the real issues by presenting at least two strawman

---

[1] The SACC is attached as Exhibit 1 to Prollenium's Motion for Leave to Amend (D.I. 62, Ex. 1).

{01537291;v1 }   -1-

arguments, (1) that Prollenium's inequitable conduct claim is just an invalidity defense, and (2) that Prollenium simply disagrees with the statements in Lebreton's declaration. The fact that the evidence regarding the prior art also supports an invalidity defense, however, is irrelevant. If it did not, it is hard to imagine how it would support a claim of inequitable conduct. And the SACC adequately shows that this is not just a matter of reasonable minds differing. Rather, it supports the reasonable inference that Lebreton made his false statements with the intent to mislead, that no POSITA (including Lebreton) would have believed them to be true and that, in fact, Lebreton knew they were false.

Finally, Allergan again argues the wrong standard, stating that Prollenium has failed to "demonstrate" or "establish" certain facts. At this stage Prollenium need not *establish* the facts supporting its claim; it need only plead sufficient facts to allow for a reasonable inference of inequitable conduct. In that regard, Allergan has failed to contest or even address the majority of the detailed facts pled in the SACC. And while Allergan cherry-picks certain factual allegations to challenge (ignoring the bulk of the allegations), it essentially argues that this Court could draw another inference. But those are arguments for trial, not the standard at the pleading stage. The SACC is not futile, and Allergan has failed to show otherwise.

## II. ARGUMENT

### A. Prollenium Adequately Pled that Lebreton Made Material Misrepresentations

The SACC provides detailed factual support for the inference that Lebreton's statements about the state of the art and knowledge of a POSITA were false and the SACC shows where in the prior art this information is found. *See* D.I. 55 at 12-13; *see, e.g.*, SACC ¶¶42-107. In the face of these allegations, Allergan still argues that Prollenium has not alleged "any material misrepresentation." D.I. 66 at 9. With respect to materiality, the Court has already held that Prollenium adequately pled this element. D.I. 55 at 13-15. And while Allergan argues that the SACC "does no more than before," the SACC encompasses 60 pages of detailed allegations—including documentary support.[2] The SACC identifies where in the prior art the relevant, material information is found (*see, e.g.*, SACC ¶¶18-24, 28-35, 59, 72-75, 82-107) and how it shows the statements in Lebreton's declaration are false (*id.* ¶¶121-130).

The SACC explains in detail, *inter alia,* that well before August 2008 (a) multiple competitors had already successfully incorporated lidocaine into existing HA dermal filler compositions that have no meaningful differences from Allergan's

---

[2] The Court previously held that Prollenium adequately pled the "who" and "when" of the misrepresentations, the affected claims (the "what"), and materiality (the "why" and "how"). D.I. 55 at 10, 13-15. The SACC maintains these allegations and provides *additional* details. *See, e.g.*, SACC ¶¶119-120, 186-193.

"invention" (*id*. ¶¶22-35); (b) prior art documents demonstrated that doing so was obvious and feasible (*id*. ¶¶82-107); (c) Lebreton had personal knowledge of these product and other prior art references (*id*. ¶¶36-81); and (d) the testing results Lebreton cited not only do not support his purported conclusions that HA gels with lidocaine degraded or became substantially less viscous after high temperature sterilization, they further demonstrate Lebreton's deceptive intent (*id. ¶¶*131-135).

### 1. The SACC specifically addresses Lebreton's misrepresentations regarding high-temperature sterilization

Allergan argues that Prollenium "ignores" Lebreton's statements on high-temperature sterilization, but later admits that Prollenium addresses this issue. D.I. 66 at 11-12. The SACC does so in detail, alleging that at the time, high-temperature sterilization in an autoclave was the *standard* method for sterilizing dermal fillers. SACC ¶59; *id*. ¶¶99, 107. In fact, the SACC addresses in detail each of the misrepresentations made by Lebreton, including those concerning a POSITA's purported knowledge of the effects of high-temperature sterilization. *See, e.g.*, *id*. ¶¶29-31, 47-48, 55, 59, 63, 76, 85, 87-89, 97-107, 121-130. As the SACC alleges, a POSITA would have known at the time, and in fact expected, that the prior art products containing lidocaine, such as Puragen Plus, Elevess, and Prevelle Silk, were high-temperature sterilized; as it was the standard method. *Id*. ¶¶59.

It is also beyond dispute that because Elevess and Prevelle Silk were FDA approved and Puragen Plus was approved in Canada, these products would be

sterilized, and the SACC plausibly alleges that this would have been done by the standard high temperature sterilization method. *Id*. As the SACC alleges, a POSITA would have known and expected that such dermal fillers were heat sterilized and that the regulatory approvals indicated no issues with respect to sterility or stability. *Id*. ¶¶29-31, 59, 63, 70, 85-89, 97-99, 105-107. To suggest otherwise would misconstrue the prior art.

These allegations are not "bald assertions," as Allergan suggests in its opposition. Prollenium's allegations regarding the import of FDA approval are supported by additional allegations in the SACC (*see, e.g.,* SACC ¶¶10-15, 28-31, 36-43). And the premise that every single factual allegation has to be supported by detailed evidence is incorrect. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). Allergan is positing the wrong standard, making a trial argument about the merits of Prollenium's allegations as opposed to arguing the sufficiency of the pleading. But "[t]he veracity and context of these statements is a question to be resolved by the finder of fact following discovery." *Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, No. 13-2012-SLR-SRF, 2015 U.S. Dist. LEXIS 142257, at *16 (D. Del. Oct. 20, 2015). In determining the sufficiency of the pleading, Prollenium's factual allegations are accepted as true and viewed in the light most favorable to Prollenium. *See Umland*

*v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). An argument that these allegations are incorrect is for trial, it does not detract from the sufficiency of the pleading.

Finally, Allergan argues that even if a lidocaine-containing dermal filler product could meet the high standards for regulatory approval with respect to stability, an inventor could, in theory, develop a product with "improved stability." D.I. 66 at 13. This is of course another trial-level theory as to the veracity of Prollenium's allegations. Moreover, it has no application here. Allergan points to no claim of any of the asserted patents reciting "improved stability" and, in fact, has argued to another Court that "adding lidocaine" was "the entire invention." *See* Transcript of Claim Construction Hearing, *Allergan USA, Inc., et al. v. Medicis Aesthetics, Inc., et al.*, No. 8:13-cv-01436-AG-JPR, at D.I. 81 (C.D. Cal. Aug. 12, 2014). Allergan is arguing different facts than are before the Court.

### 2. Prollenium's inequitable conduct counterclaim is not just an invalidity defense

Allergan's contention that Prollenium is just making invalidity argument lacks merit. D.I. 66 at 1, 6, 18, 19. To overcome the examiner's obviousness rejection, Lebreton submitted an unsupported declaration[3] that mischaracterized the state of

---

[3] Contrary to Allergan's opposition, Lebreton does not "explain his understanding" of the knowledge of a POSITA, rather, his declaration makes largely unsupported conclusions. D.I. 66 at 10; *see also* SACC, Ex. A.

the art and the knowledge of a POSITA, and thereby manufactured a false claim of "unexpected results." But for that, none of the Asserted Patents[4] would have issued. This is not some good faith debate about the meaning of disclosed prior art, this issue here is enforceability. Intentionally misrepresenting facts to the PTO in the face of *known* prior art that shows the falsity of the statements to overcome an obviousness rejection is the epitome of inequitable conduct.

### 3. *Prollenium does not mischaracterize Lebreton's declaration*

Allergan's opposition argues that Prollenium mischaracterizes Lebreton's declaration by "cherry-pick[ing] excerpts" or "tak[ing] them out of context." D.I. 66 at 10. This is not accurate; Prollenium addresses each of the statements verbatim, in the context they were presented, and addresses in detail why they are false and where in the prior art this is demonstrated. *See, e.g.*, SACC ¶¶ 121-130. And in making this argument, Allergan is again proffering an improper standard, attempting to argue whether Prollenium's allegations with respect to the statements are true, rather than addressing the sufficiency of the pleading. This is not the standard at the pleading stage. *Courtesy Prods.*, 2015 U.S. Dist. LEXIS 142257, at *16.

---

[4] *See* D.I. 63 at 3 n.1.

### 4. *Allergan's arguments about its internal documents ignore Prollenium's allegations that they confirm what was known to a POSITA at the time*

Allergan argues that its internal documents/testing cited by Prollenium do not "establish" or "demonstrate" any misrepresentation by Lebreton. D.I. 66 at 14. Again, no facts need to be proved, established, or demonstrated at the pleading stage. Equally important, Allergan wants the Court to address the testing in a vacuum and ignore the detailed allegations about surrounding prior art. The internal Allergan documents show that what motivated Allergan to develop its lidocaine-containing dermal filler products was remaining competitive with products *already launched by competitors* (SACC ¶¶53-55), and that Lebreton's testing simply confirmed what the prior art showed and the POSITAs knew—that lidocaine could be successfully added to existing crosslinked HA dermal filler products. *See, e.g.*, *id*. ¶¶25-35, 83-107). Also, the documents show that Lebreton personally *knew* of the prior art well before August 2008. *See, e.g.*, *id*. ¶¶44-81.

Allergan's argument that a different inference can be drawn from the testing documents is irrelevant. The allegations about these documents plainly support a reasonable inference that at no time did Lebreton believe lidocaine could *not* be successfully incorporated into its existing HA dermal filler products. There were no "unexpected results."

## B.  Prollenium Sufficiently Pleads Lebreton's Knowledge and His Specific Intent to Deceive the PTO

The SACC provides detailed allegations that Lebreton knew his declaration statements were false (*see, e.g.*, *id*. ¶¶28-81, 182) and that he made them for the specific purpose of gaining allowance of what became the Asserted Patents (*id*. ¶¶140-41, 181, 183, 186-93).  At a minimum, the facts alleged in the SACC support a reasonable inference that Lebreton acted knowingly and with specific intent to deceive the PTO.  *Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312, 1329 n.5 (Fed. Cir. 2009) ("A reasonable inference is one that is plausible and that flows logically from the facts alleged."); *Wyeth Holdings Corp. v. Sandoz, Inc.*, C.A. No. 09-955-LPS-CJB, 2012 WL 600715, at *7 (D. Del. Feb. 3, 2012) ("the claimant need only allege facts from which the Court could *reasonably infer* that the patent applicant made a deliberate decision to deceive the PTO.") (emphasis in original); *Zadro Prods. v. SDI Techs., Inc.*, No. 17-1406 (WCB), 2019 WL 1100470, at *5 (D. Del. Mar. 8, 2019) ("In this district, an inequitable conduct claim is rarely disallowed at the pleading stage due to the failure to adequately allege scienter.").

Allergan argues that the SACC does not allege with particularity that Lebreton's understanding of the prior art "mirrors" Prollenium's detailed allegations regarding the state of the prior art.  D.I. 66 at 20; *see also* D.I. 55 at 17-18.  This argument fails for a number of reasons.  First, the SACC alleges that not only was Lebreton *at a minimum* a POSITA (SACC ¶¶36-43), but also that he had *actual*

*knowledge* of much of the existing prior art from public information (as well as the basis of that knowledge), including knowledge of *prior art HA dermal filler products that had already successfully incorporated lidocaine* (*id.* ¶¶44-107). The SACC details the state of the prior art before August 2008, and what a POSITA would have known then. *See, e.g., id.* ¶¶16-35, 82-107. To the extent it does not offer direct factual support that Lebreton had actual knowledge of **all** the prior art in the SACC, that would not detract from the sufficiency of the pleading. It is plainly alleged that, at a minimum, Lebreton had such knowledge as a POSITA. *See, e.g., id.* ¶¶36-43. To be clear, Allergan presents no argument that Lebreton was unaware of **any** of the prior art discussed in the SACC.

Allergan also attempts to argue that Lebreton's actual knowledge of prior art HA dermal filler products with lidocaine is not relevant, because his invention utilized a different crosslinker. D.I. 66 at 19. Allergan even argues that Lebreton's declaration was seeking to convey these differences. *Id.* Allergan's argument is wrong and contrary to the facts. First, **nothing** in Lebreton's declaration is directed to, or ever mentions, the specific type of crosslinker as having any significance. To the contrary, Lebreton's declaration covers **all** crosslinked HA gels. *See* SACC, Ex. A. That Lebreton's statements were not so limited is understandable because the claims Allergan was pursuing when the declaration was submitted—and some of the

claims that ultimately issued— *are not limited to any particular crosslinker. See, e.g.*, '795 patent, claims 1-7, 9-21, 26-41; *see also* SACC ¶¶18-24, 32-35.

And even if Lebreton's statements had been limited to the specific crosslinker used by Allergan, Prollenium adequately pled why the statements were still false and that Lebreton would have known that. As the SACC alleges, the four candidate crosslinkers are biocompatible and POSITAs knew there were no material differences between the crosslinkers that were already being used in HA dermal fillers with lidocaine and the BDDE crosslinker Allergan was using. SACC ¶¶18-24, 34-35.

It is certainly reasonable to infer from the detailed allegations in the SACC that Lebreton acted with knowledge of the falsity of his statements and with specific intent to deceive the PTO.

## III. CONCLUSION

There is no credible argument that allowing the proposed amendments would be futile, and Allergan has not shown otherwise. The detailed SACC more than adequately pleads facts from which a reasonable inference can be drawn that the patents at issue are the product of inequitable conduct. The Court should grant Prollenium leave to amend.

-12-

|  |  |
|---|---|
| | ASHBY & GEDDES |
| | */s/ Andrew C. Mayo* |
| | _____ |
| *Of Counsel:* | John G. Day (#2403) |
| | Andrew C. Mayo (#5207) |
| John W. Harbin | 500 Delaware Avenue, 8th Floor |
| Gregory J. Carlin | P.O. Box 1150 |
| Warren Thomas | Wilmington, DE 19899 |
| Robert J. Leonard | (302) 654-1888 |
| MEUNIER CARLIN & CURFMAN LLC | jday@ashbygeddes.com |
| 999 Peachtree Street NE, Suite 1300 | amayo@ashbygeddes.com |
| Atlanta, GA 30309 | |
| (404) 645-7700 | *Attorneys for Defendants* |

Dated: February 14, 2020

-13-

## CERTIFICATION OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief contains 2,494 words, excluding the cover page, tables, and signature blocks, and that it complies with the Court's type, font, and word limitations.

*/s/ Andrew C. Mayo*

_____

Andrew C. Mayo